[No. 12766-4-III.　Division Three.　June 30, 1994.]

SSG CORPORATION, ET AL, *Appellants,* v. DONALD S. CUNNINGHAM, JR., *Respondent,* KATHERINE S. GWINN, *Appellant.*

*James A. Miller* and *Mills Cogan Meyers Swartling; Michael B. King* and *Lane Powell Spears Lubersky,* for appellants.

*C. Nelson Berry,* for respondent.

MUNSON, J. — Sandra Gwinn, as an additional party, and her brother Stephen Gwinn appeal the order which determined buildings belonging to SSG Corporation built on land belonging to Mr. Gwinn are the personal property of SSG and declared the leasehold deed of trust for the benefit of Ms. Gwinn and her "UCC-2" fixture filing to be of no effect.

Mr. Gwinn has been the president of SSG since 1982. In the summer of 1987 he consented to SSG's building two houses, a well, and a pump house for the use of its employees on land he owned near Cle Elum.

In November 1991, Mr. Gwinn borrowed $100,000 from Ms. Gwinn to pay down his personal line of credit at Seattle First National Bank. He gave her a promissory note and a guaranty from SSG secured by a "Leasehold Deed of Trust". The leasehold deed of trust conveyed

> [SSG]'s leasehold interest in the real property located in Kittitas County, Washington described on the attached *Exhibit A* . . . and [SSG]'s ownership interest in all the tenements, hereditaments, and appurtenances now or hereafter located on such real property . . ..

The "Leasehold Deed of Trust" and a fixture filing were recorded with the Kittitas County Auditor on November 6, 1991.

On January 17, 1992, Donald Cunningham obtained a judgment against SSG for $50,629.40 plus interest. Mr. Cunningham obtained a writ for personal property execution on the structures built by SSG on Mr. Gwinn's land. SSG moved to quash the writ, alleging the buildings were real property, SSG had only a leasehold interest in the improvements, and SSG's interest was not subject to sale as personal property. Mr. Cunningham moved to join Ms. Gwinn so that her interest in the buildings could be adjudicated, and his motion was granted.

The court held an evidentiary hearing on the issue of whether the structures were leasehold improvements or personal property. At that hearing on June 26, 1992, Mr. Gwinn testified SSG owned the two houses, the pump house, and the well and paid taxes on them. He also stated those structures were the sole remaining assets of the corporation, and their assessed value is $276,000. He described them as permanent structures which could not be removed without being demolished.

Ms. Gwinn contends the court erred in determining the structures were personal property. Historically, under the common law, a building became part of the land as it was erected. *Kutter v. Smith*, 69 U.S. (2 Wall.) 491, 17 L. Ed. 830 (1865); *Toellner v. McGinnis*, 55 Wash. 430, 104 P. 641 (1909). During the past century or so, the rule has been

modified by the creation of numerous exceptions. *See United States v. 15.3 Acres of Land*, 154 F. Supp. 770, 780-81 (M.D. Pa. 1957); *Teaff v. Hewitt*, 1 Ohio St. 511 (1853). The modern rule is that the intention of the parties controls, although a party who claims a building is personal property bears the burden of proof. *Paulina Lk. Historic Cabin Owners Ass'n v. U.S.D.A. Forest Serv.*, 577 F. Supp. 1188, 1194 (D. Or. 1983); *Ingold v. Phoenix Assur. Co.*, 230 N.C. 142, 145, 52 S.E.2d 366, 368, 8 A.L.R.2d 1439 (1949).

■■ The trial court applied the 3-prong test for determining whether an item is a fixture or personal property stated in *Lipsett Steel Prods., Inc. v. King Cy.*, 67 Wn.2d 650, 652, 409 P.2d 475 (1965):

> (1) Actual annexation to the realty, or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold."

(quoting *Forman v. Columbia Theater Co.*, 20 Wn.2d 685, 695, 148 P.2d 951 (1944)). It is undisputed the first two prongs are met here. The third and most important factor is the objective intention of the annexor to make a permanent accession. "[A]ccession . . . is a mode of acquiring ownership by the identification of a lesser thing with a greater, and it involves the loss of ownership by the owner of the lesser thing and its acquisition by the owner of the greater." 5 A. James Casner, *American Law of Property* § 19.8, at 32 (1952). The intent to make a permanent accession is inferred from the annexor's relationship to the freehold, the nature of the item affixed, and other circumstances of the annexation. *Western Ag Land Partners v. Department of Rev.*, 43 Wn. App. 167, 173, 716 P.2d 310 (1986).

The annexor's relationship to the freehold may be that of owner, tenant, or stranger. "When a property owner attaches the article to the land he is rebuttably presumed to have annexed it with the intention of enriching the freehold." *Western Ag*, at 173; *see Courtright Cattle Co. v. Dolsen Co.*, 94 Wn.2d 645, 619 P.2d 344 (1980). When a tenant erects a

building on leased land, absent an agreement to the contrary the improvement becomes a part of the real property as soon as it is constructed and title passes to the owner of the realty. *Pier 67, Inc. v. King Cy.*, 71 Wn.2d 92, 426 P.2d 610 (1967); *see Blossom Provine Lumber Co. v. Schumacher*, 147 Wash. 369, 266 P. 167 (1928). "When a person with no interest in the land affixes an article thereto in the furtherance of his own purposes, the presumption is that he intends to reserve title to the chattel in himself." *Liberty Lk. Sewer Dist. 1 v. Liberty Lk. Utils. Co.*, 37 Wn. App. 809, 813, 683 P.2d 1117, *review denied*, 102 Wn.2d 1009 (1984). In summary, if the annexor's relationship to the land is such that by making a permanent accession to the land he will lose title to the chattel, evidence of an intent to retain ownership of the chattel is evidence of an intent not to make a permanent accession to the freehold.

Ms. Gwinn assigns error to the trial court's finding that apart from SSG's pledge of a leasehold interest, there is no evidence of any relationship between Mr. Gwinn and SSG regarding the structures owned by SSG and its conclusion there was no lease regarding the structures or the underlying real property. She argues the lease came into existence when, upon learning SSG owned the buildings, Mr. Gwinn "agreed to allow SSG's continued possession of the structures". This theory, even if correct, does not support the existence of a lease at the time the buildings were constructed. The character of the improvements as real or personal property is determined as of the date of construction. *Pier 67.* The subsequent creation of a leasehold relationship would not alter the character of the structures as personal property.

Ms. Gwinn also argues the existence of a lease must be inferred from the fact SSG made improvements to the land. The cases she cites do not support this argument. *E.g., Najewitz v. Seattle*, 21 Wn.2d 656, 152 P.2d 722 (1944) (construing as a lease a written agreement denominated an employment contract). Mr. Gwinn has declared he consented to SSG's building of the houses for use by SSG employees, but

neither a term nor a lease payment was set for the right to use the property. There is no evidence which would support the existence of a lease to SSG during the time it constructed the buildings.

The evidence amply supports the trial court's unchallenged finding SSG has retained ownership of the structures. In the absence of evidence of a landlord-tenant relationship, this finding supports the conclusion SSG did not intend to make a permanent accession to the freehold and the structures are personal property.[1]

Ms. Gwinn contends the court erred in determining the leasehold deed of trust was of no effect. She argues the deed of trust conveyed both the leasehold and ownership interests of SSG and therefore was effective to convey SSG's ownership interest in the buildings. She also argues, however, that the leasehold deed of trust was intended to convey only interests in real property and, in the alternative, that SSG has no interest in the buildings but only a claim against Mr. Gwinn for materials.

The trial court resolved conflicting and ambiguous evidence, concluding the structures SSG built on Mr. Gwinn's real property remained the personal property of SSG. In the face of Ms. Gwinn's continuing argument the leasehold deed of trust conveys only an interest in real property, the trial court's conclusion the deed of trust is of no effect must be affirmed.

Ms. Gwinn contends the trial court's failure to enter findings on Mr. Cunningham's fraud claim should be deemed a finding against him on all material issues. Mr. Cunningham contends there are no genuine issues of fact, because the transfer to Ms. Gwinn is fraudulent as a matter of law. He argues if this court rejects the trial court's characterization

---

[1]SSG argues that if the structures are personal property they will not be subject to real property tax. However,

"The term 'real property' *for the purposes of taxation* shall be held and construed to mean and include the land itself . . . and all buildings, structures or improvements or other fixtures of whatsoever kind thereon . . .." (Italics ours.) RCW 84.04.090.

of the structures as personal property it should nevertheless, on the basis of his fraud claim, affirm the trial court's order.

The absence of an express finding of fact gives rise to a presumption the party having the burden of proof has failed to sustain that burden. *Smith v. King*, 106 Wn.2d 443, 722 P.2d 796 (1986). A presumption may be overcome by prima facie evidence to the contrary. *Amend v. Bell*, 89 Wn.2d 124, 570 P.2d 138, 95 A.L.R.3d 225 (1977).

The trial court's order, denominated "Order Determining Character of Property and Declaring Leasehold Deed of Trust and UCC-2 Fixture Filing to be of No Effect", does not purport to address Mr. Cunningham's allegations of fraud. In the supplemental proceedings, Mr. Cunningham's attorney suggested to the court "if the Court finds that these improvements are in fact personal property, it need not reach the issue of whether or not the grant of a leasehold interest by SSG Corporation was fraud or not." The trial court's written memorandum decision makes no mention of Mr. Cunningham's claim the giving of a security interest was fraudulent. The absence of written findings on the fraudulent transfer claim should not be presumed to constitute findings against Mr. Cunningham. The court did not reach that issue.

Mr. Gwinn contends the structures should be exempt from execution under the homestead statutes because he is living in them. "[T]he homestead consists of the dwelling house . . . in which the owner resides or intends to reside . . .". RCW 6.13.010. The trial court found SSG is the owner of the structures. This finding is unchallenged. Even under the most liberal construction of the homestead statutes, if Mr. Gwinn is not the owner, the structures are not his homestead.

Mr. Gwinn and SSG contend the order determining the structures are personal property conflicts with an earlier ruling in which the court characterized the structures as real property. The earlier ruling related to the removal of Mr. Cunningham's personal belongings from one of the houses in which he had been living. The court carefully distinguished Mr. Cunningham's ownership of his personal

belongings, SSG's ownership of the structures, and Mr. Gwinn's ownership of the underlying land, and characterized Mr. Cunningham's belongings as personal property. Nothing in the record discloses any statement or action by the court characterizing the structures as real property.

Affirmed.

SWEENEY, A.C.J., and SCHULTHEIS, J., concur.