191 P.3d 946 (2008)
Paul H. KING, Appellant,
v.
Steve RICE and Barbara Rice, individually and the marital community comprised thereof, dba Sunlight Construction, Respondents.
No. 60461-9-I.
Court of Appeals of Washington, Division 1.
September 8, 2008.
*948 Paul H. King, Seattle, WA, pro se.
David Benjamin Johnston, Attorney at Law, Gregory A. McBroom, Kevin Blair Hansen, Livengood Fitzgerald & Alskog, Kirkland, WA, for Respondents.
LEACH, J.
¶ 1 In this action for damages claimed for the destruction of a modular living unit situated on recently purchased property, the parties dispute whether the structure was real property conveyed to the buyers with the underlying real estate, or whether it remained the personal property of the seller. An object located on real estate is real property if it is annexed to the realty, its use or purpose is applied to or integrated with the use of the realty, and the annexing party intended it to be a permanent addition to the freehold. Because we cannot say as a matter of law that the structure was real property and because the respondents' claimed authority to destroy it under the parties' agreement raises a question of fact, we reverse the summary judgment dismissing the seller's complaint and remand for further proceedings.

FACTS
¶ 2 In 2003, respondents Steve and Barbara Rice executed an agreement to purchase real property from appellant Paul King. The agreement, while purporting to convey raw land only, expressly stated that it constituted "the entire understanding between the parties and supersedes all prior or contemporaneous understandings and representations. No modification of this Agreement shall be effective unless agreed in writing and signed by Buyer and Seller."
¶ 3 Two structures  a house on a permanent foundation and a modular living unit on blocks  were located on the property. King had purchased the modular structure and moved it to the property in 1984. Although the structure included a kitchen, bathroom, bedroom, and living room, King alleged he had never hooked it up to utilities and only used it to store a few tools. King further alleged that the parties orally agreed that the structure was his personal property. The purchase and sale agreement made no mention of any structures or personal property.
¶ 4 The sale closed around April 6, 2004. Escrow instructions signed by both parties included a provision that "[t]he buyer shall have 20 days after closing to remove the house presently built on the parcel."
*949 ¶ 5 In his complaint, King alleged that he sent a worker to the property between April 11 and April 16, 2004, to prepare the modular structure for moving. This would have been after closing. In his declarations and deposition, however, King stated that the worker actually began preparing the structure for moving prior to closing and was asked to leave the property after closing. Steve Rice partially corroborated this time frame, stating in his declaration that on April 8, after closing, he asked a mover on the property to leave.
¶ 6 That same day, Rice faxed King a list of conditions for removing the structure, including prior authorization, a storage fee, and liability insurance. King did not respond, but Rice did receive a fax from Roger Knight, King's paralegal. The fax quoted the escrow provision stating that "[t]he buyer shall have 20 days after closing to remove the house presently built on the parcel." Knight indicated that this provision required Rice to move the modular structure off the property without damaging it within 20 days. On April 19, Rice demolished the structure with a backhoe.
¶ 7 King sued the Rices for breach of contract, negligent destruction of personal property, and malicious mischief. He alleged that the structure was his personal property and alternatively that Rice destroyed the structure "by negligence or malicious mischief" or in breach of a written agreement.[1] Rice moved for summary judgment on the grounds that King had no interest in the structure because the deed and purchase and sale documents "unambiguously convey title"[2] to Rice.[3] In colloquy with King's counsel during oral argument the court confirmed that the issue before it was what, if any, right King had in the structure and Rice's position that the purchase and sale documents transferred ownership in the structure to Rice.[4] The court agreed with Rice and dismissed King's complaint. In its oral ruling, the court concluded that the structure was not personal property as a matter of law and that the conveyance documents therefore transferred ownership to the Rices.[5] It did not decide any other issue regarding the merit, or lack thereof, of any of King's claims. It specifically did not "even reach the conversion issue on this motion."[6]
¶ 8 King moved for reconsideration and, for the first time, submitted a closing document in which he granted the Rices an extension for closing. In a "P.S.," King stated, "We would like about 10 days to move the house." At the bottom of the document, Steve Rice wrote: "Steve Rice acknowledges receipt of extension of closing till April 6th 2004."
¶ 9 After granting a motion to strike the new evidence and other untimely filings, the court denied reconsideration in part because King attempted to "improperly supplement the record with new arguments and evidence that he could have but did not submit to the Court on summary judgment." The court also denied King's postjudgment request to amend his complaint to add claims for declaratory relief and breach of contract.[7]

DECISION
¶ 10 We review a summary judgment order de novo, engaging in the same inquiry as *950 the trial court and viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party.[8] Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[9] We do not decide appeals on the basis of issues not clearly stated in the moving party's opening summary judgment papers.[10]
¶ 11 King contends the superior court erred in concluding as a matter of law that the modular structure was not personal property and that the conveyance documents therefore transferred it to the Rices. We agree. At common law, personal property is a fixture and, therefore, part of real property if (1) the property is actually annexed to the realty, (2) its use or purpose is applied to or integrated with the use of the realty, and (3) the annexing party intended a permanent addition to the freehold.[11] Each element of this test must be met before an article may properly be considered a fixture.[12] The annexing party's objective intent at the time of installation is the most important factor.[13] This intent may be inferred from the circumstances, including the nature of the article affixed, the annexor's relation to the freehold (i.e., owner, lessee, etc.), the manner of annexation, and the purpose for which the annexation is made.[14]
¶ 12 It is undisputed that King purchased the modular structure and moved it onto his property in 1984. He describes the unit as a "fully contained house, cedar framed with ... a kitchen with mahogany cabinets, two skylights, one bedroom, a sliding glass door, and a large living room." The structure is wired and plumbed but has never been attached to the ground or utilities, has never been listed on county tax records as a building, and has only been used for storing a few tools. Viewing these facts in a light most favorable to King and in light of the common law test outlined above, we cannot say as a matter of law that the structure was real property.[15]
¶ 13 In addition, King correctly points out that the status of an object located on real estate may be determined by agreement, and such agreement "may be either in writing or parol."[16] Because King alleged below that the parties "agreed that the house was my personal property and not to be included in the purchase agreement" and because the parties' boilerplate integration clause does not necessarily preclude consideration of a parol agreement,[17] there may be *951 an additional basis for concluding that the structure was personal property.
¶ 14 Respondents argue in the alternative that even if the structure is King's personal property, the escrow instruction stating that the "buyer shall have 20 days after closing to remove the house" gave them authority to destroy it.[18] While the meaning of "buyer" is clear and undisputed,[19] the meaning of "remove" is not. Specifically, it is not clear that the word "remove" authorized destruction of the modular structure. Under the "context rule" of contract interpretation, the parties' intent is determined by viewing the contract as a whole, the objective of the contract, the contracting parties' conduct, and the reasonableness of the parties' respective interpretations.[20] Extrinsic evidence may be considered regardless of whether the contract terms are ambiguous.[21] While extrinsic evidence may not modify or contradict a written contract in the absence of fraud, accident, or mistake, we may use it to clarify the meaning of words employed in the contract.[22] This is the case even when there is an integration clause, as long as the court uses the extrinsic evidence to explain undefined contract terms, not to modify, vary, or contradict terms of the written contract.[23] If extrinsic evidence does not resolve the ambiguity, the contract will be construed against the drafter.[24]
¶ 15 On the record before us, we cannot say as a matter of law that the escrow instruction authorized the Rices to destroy the modular structure.[25] And contrary to respondents' assertions, King's negligence and malicious mischief claims are not barred by the economic loss rule. That rule bars recovery for an alleged breach of tort duties where a contractual relationship exists and the losses are economic losses.[26] But the rule does not bar recovery for personal injury or damage to property other than a defect in the property.[27] King is therefore not *952 barred from pursuing a tort remedy for the destruction of the structure.
¶ 16 King also assigns error to the trial court's denial of his motion for reconsideration. Citing a closing document he first offered below in his motion for reconsideration, he argues that the parties executed what amounted to an addendum to the purchase and sale agreement, that the addendum granted him 10 days to remove the modular structure, and that the Rices breached that provision of the agreement. The superior court, however, ruled that the document did not support reconsideration because King failed to demonstrate that it could not have been discovered and offered prior to judgment. That ruling is supported by the record and the law.[28]
¶ 17 Next, King challenges a postjudgment ruling striking certain pleadings as untimely. Although it is difficult to discern his theory of error, he seems to contend that the documents were relevant to several pending motions, not just the motion for reconsideration, and were timely as to those matters. To the extent the stricken pleadings were relevant either to King's motion to amend, respondents' motion to strike false information and request for sanctions, or respondents' application for attorney fees, King fails to demonstrate how any error in excluding them was prejudicial. He has not appealed the decisions denying his motion to amend or granting sanctions. Moreover, those rulings were well within the court's discretion and supported by the record.
¶ 18 King's remaining assignments of error are either meritless[29] or unsupported by argument and authority in his opening brief.[30] His request for attorney fees, which is raised for the first time in his reply brief, is untimely under RAP 18.1(b) and is therefore denied.
¶ 19 Reversed and remanded for further proceedings.
WE CONCUR: DWYER, A.C.J.
Dissent by: BECKER, J.
BECKER, J. (dissenting).
¶ 20 "A party who does not plead a cause of action or theory of recovery cannot finesse the issue by later inserting the theory into trial briefs and contending it was in the case all along." Dewey v. Tacoma Sch. Dist. No. 10, 95 Wash.App. 18, 26, 974 P.2d 847 (1999). King's appeal makes sense only if he pleaded a cause of action for conversion. He did not. Because he raises no issue of material fact with regard to the causes of action that he did plead, I respectfully dissent from the majority's decision to reverse and remand for trial.
¶ 21 Steve Rice bought land from Paul King for development purposes. Rice then demolished a modular structure that was sitting on it. King sued Rice, alleging breach of contract and negligence. The trial court dismissed King's claims on summary judgment.
¶ 22 Viewed in the light most favorable to King, the record indicates that King told Rice he was going to keep the structure and move it off the property. But he did not attempt to move it off before closing nor did he reserve any legal right to the structure in the sale documents. King had moved the structure onto his land in 1984 and had used it to store his tools. Rice did not mind if King moved the structure off the land because Rice was only interested in acquiring the land itself. The parties agreed to an escrow instruction allowing "the buyer" 20 *953 days after closing for removal of the structure.
¶ 23 King sent a mover over to the property about a week after closing. Rice would not permit the mover to take the structure because the mover was unlicensed and unbonded and Rice was concerned about this own liability. Rice sent King a letter spelling out certain conditions that he would have to meet in order to remove the structure: obtaining prior authorization to enter the land; procuring insurance that named Rice as an insured; and paying a storage fee of $200 a day. He stated the building was scheduled for demolition on April 20, 2004.[1] Rice then received a letter from escrow agent John Scannell quoting the escrow instruction and stating that it imposed an obligation upon Rice to remove the structure without damaging it. If Rice did not do so within the 20 days, he would be obligated to "pay us" rent in the amount of $200 a day as long as he kept it on the property.[2] Rice heard nothing directly from King. Rice demolished the structure with a backhoe a couple of weeks later.
¶ 24 King initiated this action in November 2006. He sought damages based on breach of a written contract, negligence, and possibly malicious mischief. King did not include a conversion claim in his complaint. His complaint used the following language to identify his causes of action:
III. VIOLATION OF WRITTEN CONTRACT:
3.1 That Mr. Rice has violated a written agreement for removal of the personal property from the premises. In addition the plaintiff pleads that said house was personal property of his and that said house was either destroyed by negligence or malicious mischief.
NEGLIGENT DESTRUCTION OF PERSONAL PROPERTY
4.1 PAUL KING realleges and incorporates paragraphs 1.1 through 2.3 of the Complaint.[3]
¶ 25 In May 2007, Rice moved for summary judgment. His motion began by admitting he had torn down the "shack" in order to develop the real estate into residential housing. But he claimed there was no evidence supporting King's claims of breach of contract and negligence:
Plaintiff King filed this action alleging that he somehow had an interest in the dilapidated construction shack. He alleges breach of contract and negligence. Neither the deed nor the purchase and sale documents reserve any rights in the dilapidated shack to Paul King. There is not a scintilla of evidence demonstrating breach of contract or negligence.[4]
¶ 26 In response, King did not attempt to show facts proving breach of contract or negligence. Instead, he sought to interject a claim of conversion into the case by asserting that his brief was in support of a cross-motion for partial summary judgment for conversion. "Plaintiff cross moves for partial summary judgment that the house on blocks is personal property that was not conveyed and therefore it was converted and is due damages for conversion."[5] King ended his brief with a plea that he was entitled to recovery "on the basis of tort, breach of contract, and conversion."[6] He stated that accordingly it was not necessary to determine whether Rice's retention of the structure was "theft" or his demolition of it "malicious mischief."[7] His brief went on to argue the merits of his newly asserted conversion claim.
*954 ¶ 27 Rice moved to strike King's cross-motion for summary judgment. The court struck King's cross-motion on June 14, 2007:
Plaintiff's Cross-Motion for Summary Judgment is stricken and may be renoted only in accordance with the CRs [Civil Rules] and LRs [Local Rules] and the Rules of Professional Conduct. Plaintiff failed to obtain authorization from the Court before filing the Cross-Motion, improperly "noted" the Cross-Motion, failed to comply with the CR and LR for noting motions for summary judgment and failed to seek agreement from Defendant's counsel before unilaterally filing Plaintiff's Cross-Motion. The deficiencies were without just cause or reasonable justification.[[8]]
¶ 28 As the trial court recognized, King did not attempt to file his cross-motion in compliance with the rules. King has not appealed the trial court's decision to strike his cross-motion. Therefore, the only issue before this court is whether the trial court erred in granting Rice's motion for summary judgment as to the breach of contract and negligence claims. I conclude, and the majority does not disagree, that there is not a scintilla of evidence demonstrating breach of contract or negligence.
¶ 29 As to breach of contract, King did not argue that Rice breached any provision of the purchase and sale agreement. He did not mention the agreed escrow instruction that provided, the "buyer shall have 20 days after closing to remove the house presently built on the parcel."[9] King drafted the escrow instruction, and he obviously made a mistake. It should have said "seller", not "buyer". But King did not argue mistake or the need for reformation of the language until after the summary judgment motion had been decided, at which point he was too late.[10] The trial court correctly concluded that the escrow instruction had to be taken at face value  it was Rice (the buyer), not King (the seller), who had the right to remove the structure. Rice did remove the structure. Removing the structure, even demolishing the structure, did not breach any written agreement. King's response to the motion for summary judgment does not contain any reasoned argument explaining how Rice breached a written agreement or even an oral contract. Accordingly, I would hold that King did not raise a genuine issue of material fact with respect to breach of contract.[11] I would conclude that King's cause of action for breach of contract was properly dismissed.
¶ 30 This leaves King's cause of action for negligence. It is undisputed that Rice acted intentionally when he demolished the structure with a backhoe. King's response to the motion for summary judgment is devoid of any argument that Rice's conduct was negligent. I conclude that the cause of action for negligence was also properly dismissed.
¶ 31 The majority does not discuss negligence and does not hold that King raised a material issue of fact as to Rice's negligence. Therefore it seems unlikely that the majority is remanding the case so that the claim of negligence can go to trial.
¶ 32 The majority remands the case for trial based on its inscrutable holding that King is "not barred from pursuing a tort remedy for the destruction of the structure." See majority at 951-52. The majority's disposition appears to rest on the unspoken premise that King has a cause of action for *955 conversion that still remains alive. The cases cited by the majority in footnote 27 are conversion cases. But as Rice points out, it is too late for King to change his theory of recovery by recasting his negligence claim as a conversion claim.[12] Conversion is the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it. Consulting Overseas Mgmt., Ltd. v. Shtikel, 105 Wash.App. 80, 83, 18 P.3d 1144 (2001). Conversion is an intentional tort.
¶ 33 If the structure was King's personal property, then Rice might have committed conversion by destroying it. But since King did not sue Rice for conversion, the possibility that the structure might be King's personal property is an academic issue. It is not material to the claims of breach of contract and negligence that are properly before this court.
¶ 34 It is true that the parties and the trial court discussed at length whether the structure was King's personal property. Possibly, the trial judge erred in deciding as a matter of law that the conveyance gave the structure to Rice. But the reasoning employed by the trial judge in deciding the motion for summary judgment is also irrelevant because our review is de novo. An order granting summary judgment may be sustained on any basis supported by the record. Hadley v. Cowan, 60 Wash.App. 433, 444, 804 P.2d 1271 (1991). I would sustain the order of dismissal on the basis that King failed to meet his burden to show a material issue of fact with respect to the claims he actually asserted in his complaint  negligence and breach of contract.
¶ 35 As it stands, the majority opinion remands for "further proceedings" without guidance to the trial court about what is supposed to happen now. The majority neither affirms nor reverses the trial court's decision to dismiss the breach of contract and negligence claims. The trial court is told only that King is "not barred from pursuing a tort remedy for the destruction of the structure." A tort remedy for what tort? To this question, the majority supplies no answer. And the record does not provide one. Is the majority giving King a green light to amend his complaint to add a claim of conversion on remand? If not, on what cause of action may a jury be instructed? Is the breach of contract claim still alive, such that King may once again attempt to offer other writings to support it?
¶ 36 I see no basis for leaving the door open for King to go to trial on a theory that he did not plead. "While inexpert pleadings may survive a summary judgment motion, insufficient pleadings cannot." Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wash.2d 342, 352, 144 P.3d 276 (2006). In my view, King cannot be allowed to amend his complaint to plead conversion, reformation, mistake or any new theory that may be waiting in the wings. The claims he alleged were properly dismissed, and they should act as res judicata to any claim such as conversion that "could have been raised, and in the exercise of reasonable diligence should have been raised, in the prior proceeding." Kelly-Hansen v. Kelly-Hansen, 87 Wash.App. 320, 329, 941 P.2d 1108 (1997). It is not fair to put Rice in a position where he has to continue to pay attorney fees to defend against another round of incoherent litigation. The order dismissing King's lawsuit should be affirmed.
NOTES
[1] CP 5.
[2] CP 363.
[3] Rice's motion for summary judgment identifies three issues in its statement of issues:

A. Does Paul King have an interest in the construction shack when the deed and purchase and sale documents unambiguously convey title to Steve and Barbara?
B. Should Steve and Barbara be awarded attorneys' fees and costs under the terms of the purchase and sale agreement and RCW 4.84.185 (prevailing party to receive expenses for opposing frivolous action)?
C. Should sanctions be imposed against Paul King under CR 11 (pleading must be well grounded in fact and warranted by existing law)?
CP 363.
[4] RP 4 and 22.
[5] RP 40.
[6] RP 43.
[7] The court ruled the proposed amendment was "untimely and futile" and "would be fundamentally unfair and prejudicial to defendants and contrary to policy that favors the efficient & timely resolution of cases."
[8] Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wash.2d 493, 501, 115 P.3d 262 (2005).
[9] CR 56(c); Hearst, 154 Wash.2d at 501, 115 P.3d 262.
[10] White v. Kent Medical Center, Inc., 61 Wash. App. 163, 169, 810 P.2d 4 (1991).
[11] Glen Park Assocs. v. Dep't of Revenue, 119 Wash.App. 481, 487, 82 P.3d 664 (2003).
[12] Glen Park, at 487, 82 P.3d 664; Dep't of Revenue v. Boeing Co., 85 Wash.2d 663, 668, 538 P.2d 505 (1975).
[13] Glen Park, 119 Wash.App. at 490-91, 82 P.3d 664; SSG Corp. v. Cunningham, 74 Wash.App. 708, 711, 875 P.2d 16 (1994).
[14] Glen Park, 119 Wash.App. at 488, 82 P.3d 664; SSG Corp., 74 Wash.App. at 711, 875 P.2d 16.
[15] See generally United States v. 19.7 Acres of Land, 103 Wash.2d 296, 301, 692 P.2d 809 (1984) (mobile homes that had wheels, axles and tongues still attached or stored under them and that rested on concrete blocks retained their identity as mobile units and remained personal property); Clevenger v. Peterson Constr. Co., 14 Wash.App. 424, 426, 542 P.2d 470 (1975) (mobile homes were personal, not real property where hitches and wheels were removed, but axles were left on, units were placed on blocks rather than permanent foundations, and utility connections were not fixed pipes but rather flexible hoses which could easily be connected).
[16] Liberty Lake Sewer Dist. No. 1 v. Liberty Lake Utils. Co., 37 Wash.App., 809, 814, 683 P.2d 1117 (1984).
[17] An integrated contract is one where the parties intend a written document to be a final expression of their agreement. Whether the parties intended an integrated contract is generally a question of fact. Emrich v. Connell, 105 Wash.2d 551, 556, 716 P.2d 863 (1986). While boilerplate integration clauses are strong evidence of integration, they are not operative if they are factually incorrect. Denny's Rests. v. Sec. Union Title Ins. Co., 71 Wash.App. 194, 203, 859 P.2d 619 (1993). A court may consider evidence of negotiations and circumstances surrounding the formation of the contract, and if the agreement is not completely integrated, additional terms may be proved to the extent they are consistent with the written terms. Denny's, 71 Wash.App. at 202, 859 P.2d 619; Emrich, 105 Wash.2d at 556, 716 P.2d 863.
[18] Respondents also claim that King had to reserve his rights to personal property in the conveyance documents. They fail, however, to provide, nor are we aware of, any authority supporting that proposition.
[19] King conceded in his pleadings and at argument below that he did not intend to have the Rices move the structure off the property and that the escrow instruction was supposed to have said "seller," not "buyer." He did not attempt to correct this error by pleading reformation and/or mistake below. See Geoghegan v. Dever, 30 Wash.2d 877, 889, 194 P.2d 397 (1948); In re Estate of Harford, 86 Wash.App. 259, 263, 936 P.2d 48 (1997). Accordingly, the word "buyer" cannot be modified and must be given its plain meaning. See Garrett v. Shriners Hosps. for Crippled Children, 13 Wash.App. 77, 80, 533 P.2d 144 (1975).
[20] Berg v. Hudesman, 115 Wash.2d 657, 667-68, 801 P.2d 222 (1990).
[21] Berg, 115 Wash.2d at 669, 801 P.2d 222.
[22] In re Marriage of Schweitzer, 132 Wash.2d 318, 327, 937 P.2d 1062 (1997); U.S. Life Credit Life Ins. Co. v. Williams, 129 Wash.2d 565, 569-70, 919 P.2d 594 (1996) (citing Berg, 115 Wash.2d at 669, 801 P.2d 222).
[23] Emrich, 105 Wash.2d at 556, 716 P.2d 863; Denny's Rests., 71 Wash.App. at 204, 859 P.2d 619.
[24] Queen City Sav. & Loan Ass'n v. Mannhalt, 111 Wash.2d 503, 513, 760 P.2d 350 (1988). It is undisputed that the Rices had no hand in drafting the instruction.
[25] We note that King argued below that, because the structure was his personal property, he had the right to retrieve it even if the contract allowed the Rices 20 days to remove it. We express no opinion as to the merits of that claim.
[26] Alejandre v. Bull, 159 Wash.2d 674, 683, 153 P.3d 864 (2007).
[27] Bloor v. Fritz, 143 Wash.App. 718, 738, 180 P.3d 805 (2008); see also Tinwood, N.V. v. Sun Banks, Inc., 570 So.2d 955, 960 (Fla.Dist.Ct.App. 5th Dist.1990) (mere existence of a contractual relationship between the parties does not preclude actions for civil theft and conversion); Burke v. Napieracz, 674 So.2d 756, 758 (Fla.Dist. Ct.App. 1st Dist.1996) ("Where, as here, it was not merely a failure to perform, but an affirmative and intentional act of converting the funds to his own use by allegedly stealing the monies to which he was entrusted, there is not merely a breach of contract but a separate and independent tort."); Alex Hofrichter, P.A. v. Zuckerman & Venditti, P.A., 710 So.2d 127 (Fla.Dist.Ct.App.3d Dist. 1998) (where defendant, by intentional misconduct, converted plaintiff's property to his own use, this was more than a claim for a simple breach of contract, and actions for conversion and civil theft were not barred by economic loss rule).
[28] See Wagner Dev., Inc. v. Fid. & Deposit Co., 95 Wash.App. 896, 907, 977 P.2d 639 (1999); In re Marriage of Tomsovic, 118 Wash.App. 96, 109, 74 P.3d 692 (2003).
[29] This includes his argument concerning the trial court's alleged bias.
[30] Although King's reply brief provided some argument and authority regarding his requests for admission and a continuance, we need not consider submissions made for the first time in a reply brief. State v. Bell, 10 Wash.App. 957, 521 P.2d 70 (1974) (argument and authority raised for first time in reply brief comes too late).
[1] Clerk's Papers at 422 (Exhibit K, Letter from Rice to King, April 8, 2004).
[2] Clerk's Papers at 424 (Exhibit L, Letter from Scannell to Rice, April 8, 2004).
[3] Clerk's Papers at 81.
[4] Clerk's Papers at 355.
[5] Clerk's Papers at 15.
[6] Clerk's Papers at 24.
[7] Clerk's Papers at 24. I take this statement by King as abandonment of any claim denominated as "malicious mischief".
[8] Clerk's Papers at 176. The court awarded approximately $42,000 in attorneys' fees and costs to Rice based on the attorney fee provision in the purchase and sale agreement. The court noted, "Although the attorneys' fees and costs sought may seem excessive for this uncomplicated lawsuit, the increased fees and costs are directly attributable to Plaintiff Paul King's conduct.... Plaintiff Paul King's questionable litigation tactics and intransigence significantly increased the legal fees and costs of the litigation." Clerk's Papers at 597-98.
[9] Clerk's Papers at 87.
[10] Clerk's Papers at 460 (Plaintiff's motion for leave to amend the complaint, July 21, 2007); Clerk's Papers at 311 (Order Denying Motion to Amend, July 23, 2007).
[11] At least he did not do so in a timely fashion. As the majority points out, King tried to revive his breach of contract theory in a motion for reconsideration, but the new evidence he offered in support of that theory was untimely. The majority properly affirms the trial court's decision to deny the motion for reconsideration.
[12] See Resp't Br. at 8.