FILED
COURT OF APPEALS
DIVISION II

2015 MAY 19 AM 9: 04

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| NORTHWEST CASCADE, INC., a Washington corporation, | No. 45312-6-II |
| Respondents/Cross-Appellants, | |
| v. | |
| UNIQUE CONSTRUCTION, INC., a Washington corporation; TEMPORAL FUNDING, LLC, a Washington Limited Liability Company; the WILLIAM K. and MARION L. LLLP; and SAHARA ENTERPRISES, LLC, | |
| Defendants, | |
| WILLIAM REHE and SUZANNE REHE, | PUBLISHED OPINION |
| Appellants/Cross-Respondents. | |

WORSWICK, J. — Northwest Cascade, Inc. (NWC) secured a judgment against Unique Construction, Inc. (Unique), a corporation owned by William and Suzanne Rehe. In an earlier appeal, Division One of this court held that Unique's corporate veil could be pierced, paving the way for NWC to collect its judgment against the Rehes. The Rehes filed a homestead declaration on Unique's "89th Street Property," which the trial court quashed.

The Rehes now appeal the trial court's order quashing the homestead declaration, arguing that (1) the trial court lacked personal jurisdiction over them, (2) the trial court violated RAP 7.2 by considering NWC's motion to quash while the appeal was pending in Division One of this court, (3) a claimant is an owner of a property under the homestead statutes if they possess and

use that property, even if they have no legal or equitable interest in it, and (4) they have a legal or equitable interest in the 89th Street Property because either their contributions and residence at the property give them a legal or equitable interest or piercing the corporate veil gave them Unique's interest in the property.

NWC cross-appeals the trial court's denial of its request for attorney fees and costs incurred to litigate its motion to quash, arguing that it is entitled to attorney fees and costs as the prevailing party because litigating its motion to quash was a "collection proceeding" that fell within the attorney fees and costs provision of NWC's contract with Unique.

We affirm the trial court's order quashing the homestead declaration, holding that (1) the Rehes waived personal jurisdiction by failing to timely raise it, (2) the trial court had authority under RAP 7.2 to consider NWC's motion to quash, (3) a claimant must have either a legal or an equitable interest in a property to be an owner of it under the homestead statutes, (4) Unique held all legal and equitable interest in the 89th Street Property, and (5) piercing of the corporate veil does not allow the Rehes to claim a homestead exemption in Unique's property. However, we reverse the trial court's denial of NWC's attorney fees and costs by holding that litigating NWC's motion to quash falls within the contract's attorney fees and costs provision. We remand for a determination of NWC's reasonable attorney fees consistent with this opinion.

FACTS

A.  *Background*

The Rehes are Unique's sole shareholders. William Rehe is Unique's president. In 2004 and 2005, Unique began acquiring lots for the development of a 34-lot residential real estate

project in Tacoma.[1] On March 27, 2006, Unique entered into a contract with NWC to build the plat's infrastructure. The contract contained an attorney fees and costs provision that stated:

> If the contract price is not paid as agreed and if collection proceedings or a suit is started, then [Unique] agree[s] to pay all costs incurred by [NWC], including all costs of suit and a reasonable attorneys' fee as determined by the court.

Clerk's Papers (CP) at 302.

In 2006, the Rehes moved into Unique's 89th Street Property, which was a lot with a house built by Unique. Without paying Unique rent, the Rehes continued to reside at the 89th Street Property through this litigation except for an 18-month period when they temporarily moved out.

B.     *Unique's Breach of Contract, NWC's Suit, and Unique's Transfer of the 89th Street Property*

Unique stopped paying NWC on the contract. On July 7, 2008, NWC sued Unique for breach of contract.

On July 29, 2009, Unique recorded a quitclaim deed transferring the 89th Street Property to a Nevada limited liability company (LLC) named Black Point Management. On December 16, 2010, Black Point transferred the 89th Street Property by quitclaim deed to an LLC controlled by a limited liability limited partnership that was formed at the Rehes' direction. The transfers of the 89th Street Property were identified as tax exempt and no consideration was paid for them. The transfers of the 89th Street Property left Unique insolvent.

---

[1] In 2005, Unique transferred the lots to a single purpose limited liability company wholly owned by the Rehes.

On October 30, 2009, NWC amended its complaint to add the Rehes as defendants and to add two additional claims: a claim seeking to pierce Unique's corporate veil to hold the Rehes personally liable and a claim under the Uniform Fraudulent Transfer Act[2] (UFTA) for fraudulent conveyance of the 89th Street Property.

C.    *Bifurcated Trial*

The breach of contract and UFTA claims were tried to a jury. The jury returned a verdict in favor of NWC on both claims, and made a special finding that Unique transferred the 89th Street Property with the actual intent to hinder, delay, or defraud creditors. The veil piercing claim then went to a bench trial after which the trial court ruled that Unique's corporate veil could not be pierced.

The trial court entered a judgment against Unique for $216,505.46. The trial court also voided the transfer of the 89th Street Property and quieted title to Unique. The trial court awarded attorney fees and costs to NWC for the breach of contract and UFTA claims, and awarded attorney fees to the Rehes for the veil piercing claim. The trial court dismissed the Rehes with prejudice.

D.    *First Appeal*

NWC appealed the trial court's denial of the veil piercing claim and its award of attorney fees to the Rehes. Unique cross-appealed the attorney fees and costs award. This appeal was heard by Division One of this court. *See Nw. Cascade, Inc. v. Unique Const., Inc.*, noted at 180 Wn. App. 1017, 2014 WL 1289586, *review denied*, 181 Wn.2d 1009, 335 P.3d 941 (2014).

---

[2] Chapter 19.40 RCW.

E.    *Writ of Execution on the 89th Street Property and NWC's Motion To Quash*

While the appeal was pending, the trial court entered a writ of execution against the 89th Street Property. Prior to the 89th Street Property's sale, the Rehes filed a homestead declaration, claiming to have lived at the property since 2002.

NWC filed a motion to quash the Rehes' homestead declaration. The Rehes filed a memorandum opposing NWC's motion. After a hearing on NWC's motion to quash, where the Rehes presented argument, the trial court entered an order quashing the Rehes' homestead declaration. The trial court ruled that the Rehes could not claim a homestead exemption in the 89th Street Property because they lacked a sufficient interest in that property to be owners of it under the homestead statutes and because NWC executed against the 89th Street Property to recover Unique's debt (rather than the Rehes' debt). The trial court denied NWC's request for attorney fees and costs for litigating its motion to quash.

The Rehes filed a motion for reconsideration, arguing for the first time that the trial court lacked personal jurisdiction over them. The trial court denied the motion for reconsideration. The trial court also denied NWC's request for attorney fees and costs to defend against the Rehes' motion for reconsideration.

F.    *Division One's Reversal of the Trial Court's Veil Piercing Ruling*

On March 31, 2014, Division One reversed the trial court's veil piercing ruling and held that Unique's corporate veil could be pierced. *Nw. Cascade, Inc.*, 2014 WL 1289586, at *6. Division One remanded the issues of attorney fees and costs for the trial court's determination consistent with the reversal. 2014 WL 1289586, at *6.

The Rehes appeal the order quashing the Rehes' homestead declaration. NWC cross-appeals the trial court's denial of attorney fees and costs for litigating its motion to quash.

ANALYSIS

## I. PERSONAL JURISDICTION

The Rehes argue the trial court lacked personal jurisdiction over them because the trial court had previously dismissed them with prejudice when it entered its judgment. NWC argues the Rehes waived their personal jurisdiction defense by failing to timely raise it. We agree with NWC.

A party who fails to raise the personal jurisdiction defense in any entry of appearance, pleadings, or answers waives that defense and "submits himself or herself to the jurisdiction of the court." *In re Marriage of Steele*, 90 Wn. App. 992, 997, 957 P.2d 247 (1998); *see State ex rel. Coughlin v. Jenkins*, 102 Wn. App. 60, 63, 7 P.3d 818 (2000). "Even informal acts, such as written or oral statements to the plaintiff in the action can constitute an appearance." *Coughlin*, 102 Wn. App. at 63.

Here, NWC filed a motion to quash. The Rehes filed a memorandum in opposition to NWC's motion to quash and appeared at the hearing, but did not raise a personal jurisdiction defense until its motion for reconsideration of the trial court's order quashing the Rehes' homestead declaration. Thus, by failing to raise the personal jurisdiction defense in their answer and in their appearance at the hearing, the Rehes waived that defense and submitted themselves to the trial court's jurisdiction.

## II. Violation of RAP 7.2

The Rehes argue the trial court violated RAP 7.2 by ruling on NWC's motion to quash while the Division One appeal was pending. We disagree.

After review is accepted, the trial court has authority to act in a case only to the extent provided by RAP 7.2. RAP 7.2(e) states in part:

> **Postjudgment Motions and Actions to Modify Decision.** The trial court has authority to hear and determine (1) postjudgment motions authorized by the civil rules, the criminal rules, or statutes . . . . If the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision.

RCW 6.32.270 authorizes subsequent proceedings regarding real property, and states in part:

> In any supplemental proceeding, where it appears to the court that a judgment debtor may have an interest in or title to any real property, and such interest or title is disclaimed by the judgment debtor or disputed by another person or it appears that the judgment debtor may own or have a right of possession to any personal property, and such ownership or right of possession is substantially disputed by another person, the court may, if the person or persons claiming adversely be a party to the proceeding, adjudicate the respective interests of the parties in such real or personal property . . . . Any person so made a party, or any party to the original proceeding, may have such issue determined by a jury upon demand therefor.

"[A]n interested litigant whose name appears of record . . . and over whom . . . the court has acquired jurisdiction" is a party to the proceedings. *Junkin v. Anderson*, 12 Wn.2d 58, 72, 120 P.2d 548, 123 P.2d 759 (1941).

Here, the trial court quieted title to the 89th Street Property in the judgment debtor, Unique. By subsequently filing a homestead declaration, the Rehes disputed Unique's interest in the property. NWC's postjudgment motion to quash requested the very thing RCW 6.32.270 authorized: a supplemental proceeding to adjudicate the parties' respective interests in the 89th Street Property. Because the Rehes are interested litigants whose names appear of record and

over whom the trial court had acquired personal jurisdiction by waiver, they were parties to the proceeding. Thus, by authorizing consideration of NWC's postjudgment motion, RCW 6.32.270 gave the trial court authority to hear that motion under RAP 7.2(e).[3]

Any determination the trial court made on NWC's motion to quash the Rehes' declaration of homestead would not change Division One's veil piercing ruling or the related attorney fee requests. Thus, the trial court did not need appellate court permission to enter its judgment under RAP 7.2(e), and the trial court did not err by ruling on NWC's motion to quash while the Division One appeal was pending.

### III. HOMESTEAD

The Rehes further argue they are entitled to a homestead exemption because they are owners of the 89th Street Property under the homestead statutes.[4] Again, we disagree.

We review statutory interpretation de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). If a statute's meaning is plain on its face, we must follow that plain meaning. 146 Wn.2d at 9-10. A statute's plain meaning is discerned from the ordinary meaning of the language, the context of the statute, related provisions, and the statutory

---

[3] The Rehes argue RCW 6.32.270 did not give the trial court authority to consider NWC's motion to quash because RCW 6.32.270 gave the Rehes the right to demand a jury trial. But RCW 6.32.270 requires a jury trial only if a party requests it. The Rehes do not assert, and the record does not support, that the Rehes requested a jury trial. Thus, because the Rehes did not request a jury trial under RCW 6.32.270, that statute could not prevent the trial court from considering NWC's motion to quash.

[4] NWC argues for the first time on appeal that res judicata precludes the Rehes' homestead defense. We do not consider this argument because we do not consider a res judicata claim raised for the first time on appeal. *Jumamil v. Lakeside Casino, LLC*, 179 Wn. App. 665, 680, 319 P.3d 868 (2014).

scheme as a whole. *Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 909, 154 P.3d 882 (2007). If a term is defined in a statute, we use that definition. *Pac. Indus. Inc. v. Singh*, 120 Wn. App. 1, 6, 86 P.3d 778 (2003). "Homestead and exemption laws are favored in law and are to be liberally construed." *Sweet v. O'Leary*, 88 Wn. App. 199, 204, 944 P.2d 414 (1997).

Article 19, section 1 of the Washington State Constitution states, "The legislature shall protect by law from forced sale a certain portion of the homestead and other property of all heads of families." In 1895, the legislature responded to this directive by passing the homestead statutes, former chapter 6.12 RCW.[5]

RCW 6.13.010 defines "homestead" and "owner":

(1) The homestead consists of real or personal property that *the owner uses as a residence*. In the case of a dwelling house or mobile home, the homestead consists of the dwelling house or the mobile home in which *the owner resides or intends to reside*, with appurtenant buildings, and the land on which the same are situated and by which the same are surrounded . . . . Property included in the homestead must be actually intended or used as the principal home for the owner.
(2) As used in this chapter, the term "owner" includes but is not limited to a purchaser under a deed of trust, mortgage, or real estate contract.

(Emphasis added). RCW 6.13.070 states in part:

[T]he homestead is exempt from attachment and from execution or forced sale for *the debts of the owner* up to [$125,000].

(Emphasis added); *see* RCW 6.13.030. RCW 6.13.040(1) states in part:

[A] homestead . . . is automatically protected by the exemption . . . from and after the time the real or personal property is occupied as a principal residence by the owner or, if the homestead is unimproved or improved land that is not yet occupied as a homestead, from and after the declaration or declarations required by the following subsections are filed for record.

---

[5] Former chapter 6.12 RCW was recodified as chapter 6.13 RCW in 1981 (LAWS OF 1981, ch. 329, § 22). Former chapter 6.12 RCW was amended numerous times prior to its 1981 recodification. These pre-1981 amendments do not affect our analysis.

Under this plain language, only the owner of a property may claim a homestead exemption in that property.

To claim a homestead exemption in a property, the owner must either occupy the property as a principal residence or intend to do so. RCW 6.13.040(1). Once the owner occupies the property as a principal residence, a homestead exemption is established automatically without a declaration. RCW 6.13.040(1). An owner who intends to occupy a property as a principal residence in the future may file a declaration of homestead to establish the exemption from the date the declaration is filed.[6] *See* RCW 6.13.040(1).

A. *Meaning of the Term "Owner" in the Homestead Statutes*

The Rehes argue that under the homestead statutes, they need to show only possession and use of a property to be the owner of that property. NWC argues the Rehes must show either a legal or an equitable interest in a property to be the owner of that property. We agree with NWC.

Prior to 1981, the homestead statutes used the term "claimant" instead of "owner." Former RCW 6.12.040 (1977). Four key cases from the Supreme Court interpreted the homestead statutes as they existed prior to the 1981 recodification that added the term "owner."

---

[6] The Rehes correctly assert that the lack of a valid homestead declaration does not prevent them from having an *automatic* homestead exemption in the 89th Street Property. *See* RCW 6.13.040(1). But because the trial court's order quashing the Rehes' homestead declaration concluded the Rehes had no homestead exemption in the 89th Street Property because they *lack a sufficient interest* in the property, we interpret the trial court's order quashing the Rehes' homestead declaration as precluding the Rehes from claiming an automatic homestead exemption in the 89th Street Property.

First, in *Downey v. Wilber*, a claimant owned a dwelling house on land he leased. 117 Wash. 660, 661, 202 P. 256 (1921). The claimant claimed a homestead exemption to the land and dwelling house. 117 Wash. at 661. The Court agreed, holding that title in fee to a property is not necessary for a homestead exemption because the only interest required is "a sufficient interest in real property to entitle him to maintain a home thereon." 117 Wash. at 661.

Next, in *Desmond v. Shotwell*, a vendee purchased a property from a vendor pursuant to a conditional contract under which the vendor kept title to the property until the vendee completed payment. 142 Wash. 187, 188, 252 P. 692 (1927). The Court had ruled in a previous case that such a contract deprived the vendee of any legal or equitable title in the property until he completed payment. 142 Wash. at 188. Accordingly, the judgment creditor in *Desmond* argued that because a vendee who had not completed payment had no legal or equitable title in the property, such a vendee could not claim a homestead exemption in that property. 142 Wash. at 188. The court disagreed, holding that "nowhere in the statutes providing for homesteads is there any requirement that the person asserting the right must own either a legal or an equitable interest in the property claimed." 142 Wash. at 188.

In *Security Savings & Loan Association v. Busch*, the claimants attempted to claim a homestead exemption to a property they had conveyed to another by quitclaim deed. 84 Wn.2d 52, 52-53, 55-56, 523 P.2d 1188 (1974). The claimants argued that they did not need a legal title to the residence, citing *Downy* and *Desmond*. *Busch*, 84 Wn.2d at 55. The court disagreed, holding that because the homestead declarants in both *Downy* and *Desmond* possessed a legal interest in the property at issue, the language from *Desmond* suggesting that a legal or equitable interest was not required was dicta. *Busch*, 84 Wn.2d at 55. The Court held that either a legal or

equitable interest is required because absent such an interest, "there was nothing left to which [a] homestead could . . . attach." 84 Wn.2d at 56.

In *Felton v. Citizens Federal Savings & Loan Association of Seattle*, a claimant borrowed money from a loan association, secured by a deed of trust against the claimant's property, and later claimed a homestead exemption in the property. 101 Wn.2d 416, 417, 679 P.2d 928 (1984). The loan association argued the claimant could not claim a homestead exemption in the property because he needed a legal interest in the property, rather than the equitable interest he had under the deed of trust. 101 Wn.2d at 419. Our Supreme Court rejected the loan association's argument, holding that where an equitable interest exists, such equitable interest is sufficient to claim a homestead exemption in a property. The court stated:

> [A]s we stated (in dicta) in *Desmond*, "nowhere in the [homestead] statutes . . . is there any requirement that the person asserting the right must own either a legal or an equitable interest in the property claimed." What was required by [the homestead statutes] at all times relevant to this case was that homestead claimants live on the property as their home, or intend to do so. Thus, possession was (and is) the key to the right to homestead.[7]

101 Wn.2d at 419-20 (some alterations in original) (internal citations omitted) (quoting *Desmond*, 142 Wash. at 188).

Interpreting the plain meaning of the word "owner" in tandem with the case law, owners must have ownership of an interest "to which their homestead could . . . attach." *Busch*, 84

---

[7] While *Felton* used the word "owner" and referenced the post-1981 amendment version of the homestead statutes, it was actually interpreting the statute as it existed prior to 1981 because the homestead declaration in that case was filed prior to 1981. 101 Wn.2d at 417-18.

Wn.2d at 56. Thus, to be an owner of a property one must have a legal or an equitable interest in that property.[8]

Each of the four cases discussed above turned on whether the claimant had at least a legal or an equitable interest in the property. As explained in *Busch*, the claimant in *Desmond* and the claimant in *Downey* both had legal interests in the property allowing them to claim a homestead exemption. *See Busch*, 84 Wn.2d at 55-56; *Downey*, 117 Wash. at 661; *Desmond*, 142 Wash. at 188. In *Felton*, the deed of trust provided the claimant with an equitable interest in the property that allowed him to claim a homestead exemption. 101 Wn.2d at 419-20. But in *Busch*, the claimants who sacrificed their legal and equitable interest in the property by quitclaiming it to another could not claim a homestead exemption. 84 Wn.2d at 56. In these prior cases, the court explained that the legislature intended to limit the term owner to parties that own a legal or an equitable interest in the property "to which their homestead could . . . attach." 84 Wn.2d at 56.

B.    *Application to the Rehes' Homestead Exemption in the 89th Street Property*

The Rehes argue they have a legal or equitable interest in the 89th Street Property because the Rehes' contributions and residence at the property give them a legal or equitable

---

[8] The Ninth Circuit Court of Appeals cited *Felton* to hold that under the Washington homestead statutes, the owner needs an equitable interest in the property *only* where the owner cannot show occupancy and use. *In re Wilson*, 341 B.R. 21, 25 (B.A.P. 9th Cir. 2006). For the reasons set out in this opinion, we hold that this is an inaccurate interpretation of the homestead statutes. *See In re Salvini's Estate*, 65 Wn.2d 442, 446-47, 397 P.2d 811 (1964) (holding that federal courts' interpretation of state statutes do not bind Washington state courts).

interest and because piercing of the corporate veil gave them Unique's interest in the property. We disagree.[9]

    1. *The Rehes' Interest in the Property after Quieting Title to Unique.*

The Rehes argue they have an equitable interest in the 89th Street Property because they possessed and used that property and because they, without consideration, transferred to Unique the 89th Street land and the funds to build the house. We disagree because when the trial court quieted title to the 89th Street Property in Unique in a ruling that was not appealed, it placed all legal and equitable interest in the land in Unique.

Our Supreme Court has held that a corporation's shareholders have no property interest in that corporation's physical assets because the corporations are separate organizations with different privileges and liabilities from the shareholders. *Christensen v. Skagit County*, 66 Wn.2d 95, 97, 401 P.2d 335 (1965). Moreover, living on a property, standing alone, does not create a legal or equitable interest in the property sufficient to claim a homestead. *See SSG Corp. v. Cunningham*, 74 Wn. App. 708, 714, 875 P.2d 16 (1994).

Here, the trial court quieted title to the 89th Street Property in Unique, and the Rehes did not challenge this determination. The Rehes lost any interest in the land and money they contributed to Unique when they contributed it. *See Christensen*, 66 Wn.2d at 97. The mere fact

---

[9] NWC argues the Rehes' corporate veil argument violates judicial estoppel by attempting to pierce the corporate veil for the Rehes' benefit, when the Rehes argued at trial that NWC could not pierce the corporate veil for NWC's benefit. But "judicial estoppel may be applied only in the event that a litigant's prior inconsistent position benefited the litigant or was accepted by the court." *Taylor v. Bell*, __ Wn. App. __, 340 P.3d 951, 958 (2014). Because Division One reversed the trial court and held that the veil *could* be pierced for NWC's benefit, the Rehes' prior position that the veil could not be pierced did not benefit the Rehes and was not accepted by the court. Thus, judicial estoppel does not apply.

they live on the property does not give them a legal or equitable interest in the property to claim a homestead exemption. *See SSG Corp.*, 74 Wn. App. at 714. Thus, we hold that the trial court's unchallenged ruling quieting title in Unique gave all legal and equitable interest in the 89th Street Property to Unique, and that this deprived all other parties, including the Rehes, of any legal or equitable interest in the 89th Street Property.

2. *The Rehes' Interest in the 89th Street Property after Corporate Veil Piercing*

The Rehes argue that because the corporate veil was pierced, the Rehes and Unique are the same legal entity. Thus, the Rehes argue that because Unique is an owner of the 89th Street Property, the Rehes are also owners of the 89th Street Property, thus allowing the Rehes to claim a homestead exemption in Unique's property. We disagree.

Veil piercing is an equitable remedy imposed to rectify an abuse of the corporate privilege. *Columbia Asset Recovery Grp., LLC v. Kelly*, 177 Wn. App. 475, 488, 312 P.3d 687 (2013). Where the corporate veil can be pierced, it can be pierced "not for all purposes, but only for the purpose of adjusting the allocation of loss between the particular creditor and a person who has, under all the circumstances, misused the corporate form." EDWARD BRODSKY AND M. PATRICIA ADAMSKI, *Law of Corporate Officers and Directors: Rights, Duties and Liabilities* 1414 (2011) (citation omitted); *see Garvin v. Matthews*, 193 Wash. 152, 155-57, 74 P.2d 990 (1938); *see also Rena-Ware Distrib., Inc. v. State*, 77 Wn.2d 514, 518, 463 P.2d 622 (1970). Even where the veil can be pierced for one purpose, we continue to honor the corporation's separate identity except where doing so would perpetuate a fraud or injustice. *See Garvin*, 193 Wash. at 155-57; *Wash. Sav-Mor Oil Co. v. Tax Comm'n*, 58 Wn.2d 518, 523, 364 P.2d 440

(1961); *Morgan v. Burks*, 93 Wn.2d 580, 587, 611 P.2d 751 (1980); *Rena-Ware Distributors, Inc.*, 77 Wn.2d at 518.

Here, Division One held that the corporate veil could be pierced, allowing the Rehes to be held liable for the debts of Unique. This does not mean, however, that the corporate veil can be pierced for the purpose of allowing the Rehes to claim a homestead exemption in Unique's property. Allowing the Rehes to claim a homestead in Unique's property would neither serve the purpose of adjusting the allocation of loss between the particular creditor (NWC) and the persons who have misused the corporate form (the Rehes) nor rectify the Rehes' abuse of the corporate privilege. In fact, it would do the opposite and reward the Rehes' misuse of the corporate form by allowing them to use corporate veil piercing to protect the corporate assets.

Allowing the Rehes to have a homestead exemption would neither serve the purpose of adjusting the allocation of loss between the creditor and the persons who misused the corporate form nor rectify an abuse of the corporate privilege. Thus, the corporate veil piercing does not allow the Rehes to claim a homestead exemption in Unique's property.

IV. CROSS-APPEAL: THE TRIAL COURT'S DENIAL OF ATTORNEY FEES TO NWC

On its cross-appeal, NWC argues the trial court erred by denying it reasonable attorney fees and costs for litigating its motion to quash. NWC argues it is entitled to reasonable attorney fees and costs as the prevailing party because litigating its motion to quash was a "collection proceeding" that fell within the contract's attorney fees and costs provision. We agree.

We review de novo whether a statute authorizes attorney fees and costs. *Niccum v. Enquist*, 175 Wn.2d 441, 446, 286 P.3d 966 (2012). RCW 4.84.330 provides that where a contract or lease authorizes attorney fees and costs, the prevailing party is entitled to fees and

16

costs. An award of attorney fees and costs under RCW 4.84.330 is mandatory, with no discretion except as to the amount. *Singleton v. Frost*, 108 Wn.2d 723, 729, 742 P.2d 1224 (1987); *Kofmehl v. Steelman*, 80 Wn. App. 279, 286, 908 P.2d 391 (1996).

Here, the contract's attorney fees and costs provision stated:

> If the contract price is not paid as agreed and if collection proceedings or a suit is started, then [Unique] agree[s] to pay all costs incurred by [NWC], including all costs of suit and a reasonable attorneys' fee as determined by the court.

CP at 302.

The contract price was not paid, and executing against the 89th Street Property to collect the contract price required litigating the Rehes' homestead exemption in the 89th Street Property. Thus, litigating NWC's motion to quash was part of the "collection proceedings" that fell within the contract's attorney fees and costs provision. Because the corporate veil has been pierced, it is irrelevant whether Unique or the Rehes signed the contract because Unique and the Rehes are treated as a single legal entity for the purpose of adjusting the allocation of loss between NWC and the Rehes. Thus, because NWC is the prevailing party, it is entitled to attorney fees under this contractual provision. RCW 4.84.330. Accordingly, we reverse the trial court's ruling on attorney fees and remand for a determination of attorney fees consistent with this opinion.

## ATTORNEY FEES ON APPEAL

Both parties request reasonable attorney fees on appeal pursuant to the contract. A contract provision that authorizes attorney fees below authorizes attorney fees on appeal. "'Where a statute allows an award of attorney fees to the prevailing party at trial, the appellate court has inherent authority to make such an award on appeal.'" *Colwell v. Etzell*, 119 Wn. App. 432, 442-43, 81 P.3d 895 (2003) (quoting *Standing Rock Homeowners Ass'n v. Misich*, 106 Wn.

No. 45312-6-II

App. 231, 247, 23 P.3d 520 (2001)). Because NWC prevails on appeal, we grant NWC attorney fees on appeal and deny the Rehes' attorney fees on appeal.

We affirm the trial court's order quashing the Rehes' homestead declaration, but reverse the trial court's ruling on attorney fees and remand for a determination of NWC's reasonable attorney fees consistent with this opinion. We award NWC reasonable attorney fees on appeal.

_____
Worswick, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Sutton, J.

18