FILED
6/29/2020
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| CITY OF SEATTLE, | No. 78230-4-I |
| Petitioner/Cross-Respondent, | |
| v. | ORDER DENYING MOTION FOR RECONSIDERATION, WITHDRAWING OPINION, AND SUBSTITUTING OPINION |
| STEVEN GREGORY LONG, | |
| Respondent/Cross-Petitioner. | |

Respondent/Cross-Petitioner Steven Long filed a motion for reconsideration of the opinion filed on May 4, 2020. Petitioner/Cross-Respondent City of Seattle filed a response. The court has determined that the motion should be denied. However, the opinion should be withdrawn, and a substitute opinion filed. Now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; and it is further

ORDERED that the opinion filed on May 4, 2020, is withdrawn; and it is further

ORDERED that a substitute opinion shall be filed.

_____
Chun, J.

_____                    _____
                                                    Smith, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CITY OF SEATTLE, | No. 78230-4-I |
| Petitioner/Cross-Respondent, | DIVISION ONE |
| v. | |
| STEVEN GREGORY LONG, | PUBLISHED OPINION |
| Respondent/Cross-Petitioner. | |

CHUN, J. — The Washington State Constitution mandates that the legislature protect portions of homesteads from forced sale. Accordingly, over a century ago, Washington passed its first homestead law. And over 25 years ago, our state legislature expanded homestead protection to "personal property that the owner uses as a residence," including automobiles. The law requires Washington courts to construe the "Homestead Act" (Act), chapter 6.13 RCW, broadly due to "the sanctity with which the legislature has attempted to surround and protect homestead rights." In re Marriage of Baker, 149 Wn. App. 208, 212, 202 P.3d 983 (2009).

Here, the city of Seattle (City) properly concedes that Steven Long's truck, which constituted his principal residence, may constitute a homestead. State and Seattle laws, however, allow for the forced sale of a vehicle after impoundment, regardless of whether such personal property constitutes a homestead. This case concerns whether the City violated Long's homestead

rights when it towed his truck and withheld it under the threat of forced sale unless he paid the impoundment costs or signed a payment plan.

Long concedes that the City could have ticketed him, towed his truck, and required him to pay for towing and storage costs and an administrative fee without violating his rights. The problem, Long argues, is that the City withheld the truck under the threat of a forced sale if he did not sign a payment plan. We agree. As noted above, the law requires us to construe the Homestead Act broadly in favor of the homeowner, so that it may achieve its purpose of protecting homes. In doing so, we determine that the Act protected Long's truck as a homestead and the City violated the Act by withholding the truck subject to auction unless he paid the impoundment costs or agreed to a payment plan. We therefore affirm the superior court's decision to void the payment plan.

This case also presents the following constitutional issues: first, whether impounding a vehicle that serves as a home and requiring the registered owner to pay the associated costs constitutes excessive punishment under the federal constitution's Eighth Amendment; second, whether a vehicle owner may assert the state-created danger doctrine under the due process clause to obtain relief from impoundment; and third, whether Long may raise for the first time on appeal that towing a vehicle that serves as a home violates the private affairs guaranty of our state constitution.

We conclude these additional constitutional arguments fail. As for the Eighth Amendment, assuming without deciding that the impoundment and associated costs constitute penalties, they are not excessive because they

2

directly and proportionally relate to the offense of illegal parking and are the exact penalties the Seattle City Council authorized. We also determine that Long cannot assert the state-created danger doctrine to seek relief from the impoundment, and he cannot raise his claim under the private affairs guaranty for the first time on appeal.

Our decision does not affect the City's authority to tow and impound an illegally parked vehicle.[1] Nor does it prohibit the City from charging a vehicle owner for costs associated with the towing and impounding of a vehicle. But if that vehicle serves as the owner's principal residence, the City may not withhold the vehicle from the owner under the threat of forced sale.

We affirm in part and reverse in part.

## I. BACKGROUND

King County (County) currently faces a homelessness[2] crisis. In January 2019, researchers identified 11,199 people experiencing homelessness within the County.[3] Of these individuals, 2,147 lived in a vehicle.[4] These figures

---

[1] We note here that recently, the City passed Ordinance No. 126042 to permit the creation of 40 transitional encampments as an interim use where people living in their cars may camp indefinitely. Seattle Ordinance 126042, § 1 (Feb. 28, 2020).

[2] For purposes of this opinion, we use the definition of "homeless" found in the Count Us In report, which, "[u]nder the Category 1 definition of homelessness in the HEARTH Act, includes individuals and families living in a supervised publicly or privately operated shelter designated to provide temporary living arrangements, or with a primary nighttime residence that is a public or private place not designed for or ordinarily used as a regular sleeping accommodation for human beings, including a car, park, abandoned building, bus or train station, airport, or camping ground." APPLIED SURVEY RESEARCH & ALL HOME, COUNT US IN 116 (2019), http://allhomekc.org/wp-content/uploads/2019/09/KING-9.5-v2.pdf [https://perma.cc/LJL2-WNJL].

[3] Homelessness in King County 2019, ALL HOME, http://allhomekc.org/wp-content/uploads/2019/05/All-Homes-Infographic-V04.pdf [https://perma.cc/5LQX-ZCQE].

[4] Homelessness in King County 2019, supra.

apparently underestimate the number of people experiencing homelessness in the County.[5]

A. Seattle's 72-hour Rule

The Seattle Municipal Code (SMC) generally prohibits parking a vehicle in the same location on City property for more than 72 hours. SMC 11.72.440(B) (72-hour Rule). If a vehicle is parked in violation of the 72-hour Rule, it is "subject to impound as provided for in Chapter 11.30 SMC." SMC 11.72.440(E). SMC 11.30.030 incorporates applicable provisions of chapter 46.55 RCW by reference. Under RCW 46.55.140(1), "[a] registered tow truck operator who has a valid and signed impoundment authorization has a lien upon the impounded vehicle for services provided in the towing and storage of the vehicle." If the registered owner does not claim their vehicle or contest the impoundment within 15 days of the tow, the tow truck operator "shall conduct a sale of the vehicle at public auction" and use the proceeds to satisfy its lien. RCW 46.55.130(1), (2)(h).

If a person seeks to redeem an impounded vehicle without contesting the impoundment, then they must pay the towing contractor for the removal, towing, and storage costs of the impoundment plus an administrative fee. SMC 11.30.120(B). If a person chooses to contest the impoundment, then they may request a hearing before the municipal court. SMC 11.30.160. If the municipal court determines the City properly impounded the vehicle, then the vehicle "shall be released only after payment to the City of any fines imposed on

---

[5] APPLIED SURVEY RESEARCH & ALL HOME, supra, at 5.

any underlying traffic or parking infraction and satisfaction of any other applicable requirements of SMC 11.30.120(B) and payment of the costs of impoundment and administrative fee to the towing company." SMC 11.30.160(B). The municipal court also may allow the owner to make payments for the impoundment costs and administrative fee over time if there is extreme financial need and effective guarantee of payment. SMC 11.30.160(B). In that case, the City pays the impoundment costs to the towing company. SMC 11.30.160(B).

B. Steven Long

Long, a 60-year-old member of the Confederated Salish and Kootenai Tribes of Flathead Nation, was evicted from his apartment in 2014. Since then, he has lived in his truck, a 2000 GMC 2500 Sierra valued at about $4,000. Long works as a general laborer and keeps work tools, as well as personal items, in his truck. Long's work includes construction, painting, light plumbing, mechanics, and other labor.

In June 2016, while driving his truck, Long heard "grinding noises" coming from the gears. Long pulled into a store parking lot and stayed there for a few weeks with the business's permission. On July 5, 2016, Long moved his truck to an unused gravel lot owned by the City. Long stated that he parked at the lot because "it is secluded, there were other individuals living in vehicles, and the public did not appear to use it regularly." The lot was also near a day center for the homeless.

Three months later, on October 5, 2016, police were dispatched to an area near the gravel lot for an unrelated complaint. After the police dealt with the

complainant, another individual walked up and reported an incident involving Long. The officers approached Long and told him that, under city ordinance, his truck could not remain parked on city property for more than 72 hours. Long states that he told the officers the truck was inoperable and that he needed a part to repair it. Long also claims he told the officers that the truck was his home. The officers called a parking enforcement officer (PEO) to "tag" the truck. A PEO arrived and posted a 72-hour notice, which stated that the vehicle would be impounded it if he did not move it at least one city block within 72 hours, on Long's truck.

Long did not move his truck because he did not believe it was running well enough to drive. On October 12, 2016, Lincoln Towing, which contracts with the City to perform impound services, towed Long's truck while he was away working. Long learned of the impoundment when he returned to the lot around midnight. He was distressed because "it was a cold night and the beginning of an intense wind and rain storm." The truck contained his "winter jacket, clothes, sleeping bag, blankets, tools, tool boxes, air mattress, cooking stove and utensils, change for the bus, rubbing alcohol for [his] joints, laptop, and all [his] personal items for bathing and cleaning [him]self." After unsuccessfully trying to create a shelter out of a tarp, Long went to the nearby day center. Because the center did not have any available beds or mats, Long sat in a chair until the morning. Without his truck, Long began to live outside.

On October 18, 2016, Long obtained access to his truck at the Lincoln Towing lot and removed some personal items and bedding that he could carry.

Long, however, could not afford to pay the costs to redeem his truck.

Long requested a hearing on the impoundment; the hearing occurred before a magistrate at Seattle Municipal Court on November 2, 2016. Long told the court that the truck was his home. But because Long did not argue that he had parked his truck legally, the magistrate determined that the ticket and impoundment were proper. The magistrate waived the $44 ticket, reduced the impoundment charges from $946.61 to $547.12, and added a $10 administrative fee. The magistrate set up a payment plan that required Long to pay $50 per month. Long felt he "had no real choice but to agree" to the payment plan because he needed his truck and did not want the City to auction it.

After the hearing, Long retrieved his truck from the impound lot. There, he learned that if he had not retrieved the vehicle, Lincoln Towing would have sold it at auction three days later—on November 5, 2016. Long drove his truck to a friend's property for storage. As of March 13, 2017, Long continued to experience homelessness, worked in Seattle, and lived outside.

Long appealed the magistrate's decision to a municipal court judge. On March 13, 2017, after discovery, Long moved for summary judgment. He argued that the citation and impoundment of his vehicle and the associated fines, fees, and penalties violated (1) the excessive fines clause of the Eighth Amendment, (2) the due process clause of Fourteenth Amendment to the United States Constitution, and (3) the homestead protections under the Washington Constitution and the Homestead Act.

7

On May 10, 2017, the municipal court denied Long's motion. Long filed a notice of RALJ appeal to King County Superior Court on June 8, 2017.[6]

On March 2, 2018, the superior court affirmed in part and reversed in part. The court affirmed that the impoundment itself did not violate either the Eighth Amendment or Long's substantive due process rights. It reversed in part, however, because it determined that the impoundment fees were excessive in violation of the Eighth Amendment and that attaching Long's truck as security for the impoundment fees violated the Homestead Act. The court also voided the payment plan and ordered the City to refund previous payments.

Both Long and the City filed motions for discretionary review, which a commissioner of this court granted.

## II. ANALYSIS

A trial court properly grants summary judgment in the absence of a genuine issue of material fact. CR 56(c); Billings v. Town of Steilacoom, 2 Wn. App. 2d 1, 14, 408 P.3d 1123 (2017). In reviewing a summary judgment ruling, we "engage[] in the same inquiry as the trial court, with questions of law reviewed de novo and the facts and all reasonable inferences from the facts viewed in the light most favorable to the nonmoving party." Billings, 2 Wn. App. 2d at 14. The parties do not appear to dispute any of the facts material to our analysis.

A. The Homestead Act

The City argues that while a truck may qualify for homestead protection,

---

[6] On June 28, 2017, the City orally moved for a final judgment before the municipal court, which the court granted.

the Homestead Act does not apply here.  Long contends that "[t]he City violated the Homestead Act by attaching [his] residence as security for his impound debts and by threatening to sell his home for those debts."  We agree in part with Long and conclude that the City violated the Homestead Act.

1.  The Origins of Washington's Homestead Act

States began passing homestead laws in the 19th century.  Paul Goodman, The Emergence of Homestead Exemption in the United States: Accommodation and Resistance to the Market Revolution, 1840-1880, 80 J. AM. HIST. 470, 470 (1993).  Such laws aim to protect a debtor's dwelling from execution and forced sale.  WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK SERIES: INTERESTS IN REAL PROPERTY AND DUTIES OF THIRD PARTIES § 10.2(2) (4th ed. 2015).  Texas was the first state to pass a homestead exemption law in 1839, and 18 more states passed homestead laws between 1848 and 1852.  Goodman, supra, at 470.  These laws "aimed at providing a measure of security in an increasingly insecure, volatile economy" that accompanied the development of capitalism in the United States.  Goodman, supra, at 470.  Before these laws, the United States experienced financial "panic[s]" that caused thousands to suffer from unemployment and bankruptcy and to lose their homes.  Goodman, supra, at 471.  In response, states passed homestead exemption laws that "promised to shield at least homes so that families no longer need worry that the breadwinner's bad luck or incompetence would plunge an entire household into destitution."  Goodman, supra, at 471.

9

The Washington State Constitution mandates that "[t]he legislature shall protect by law from forced sale a certain portion of the homestead and other property of all heads of families." CONST. art. XIX, § 1. Washington passed its first homestead law in 1895 under this constitutional mandate.[7] LAWS OF 1895, ch. 64, § 1; REM. REV. STAT. § 528 (Supp. 1945).

As was true with the first homestead laws in the nation, the purpose of Washington's Homestead Act is to place qualifying homes, or portions of them, beyond the reach of financial misfortune and to promote the stability and welfare of the state. Clark v. Davis, 37 Wn.2d 850, 852, 226 P.2d 904 (1951).

The law requires us to liberally construe the Homestead Act in favor of the debtor so it may achieve its purpose of protecting homes. In re Dependency of Schermer, 161 Wn.2d 927, 953, 169 P.3d 452 (2007) ("The [Homestead Act] is favored in law, and courts construe it liberally so it may achieve its purpose of protecting family homes."); Baker, 149 Wn. App. at 212 (broadly interpreting the Homestead Act due to "the public policy involved in [Washington's] homestead statutes" and "the sanctity with which the legislature has attempted to surround and protect homestead rights"); In re Tr.'s Sale of Real Property of Upton, 102 Wn. App. 220, 223, 6 P.3d 1231 (2000) ("'homestead and exemption laws are favored in law and are to be liberally construed'" (quoting In re Tr.'s Sale of Real Property of Sweet, 88 Wn. App. 199, 204, 944 P.2d 414 (1997))); Burch v. Monroe, 67 Wn. App. 61, 64, 834 P.2d 33 (1992) (noting that homestead laws

_____

[7] Washington Territory passed its first homestead law in 1860. Goodman, supra at 472.

are enacted "'in the interest of humanity'" because "[t]heir intent is to ensure shelter for families" (quoting Macumber v. Shafer, 96 Wn.2d 568, 570, 637 P.2d 645 (1981))); Webster v. Rodrick, 64 Wn.2d 814, 816, 394 P.2d 689 (1964) (stating that homestead statutes "do not protect the rights of creditors; they are in derogation of such rights" (citing First Nat'l Bank of Everett v. Tiffany, 40 Wn.2d 193, 242 P.2d 169 (1952))); Downey v. Wilber, 117 Wash. 660, 661, 202 P. 256 (1921) (noting that the purpose of the Homestead Act "is to prevent a forced sale of the home; in other words, to secure the claimant and [their] family in the possession of [their] home").

Washington's Homestead Act defines a "homestead" as "real or personal property that the owner uses as a residence." RCW 6.13.010(1). While mobile homes were the first form of personal property covered by the Act, the legislature amended the Act in 1993 to cover "personal property that the owner uses as a residence" so as to extend homestead protection to cars and vans. FINAL B. REP. ON SUBSTITUTE S.B. 5068, 53d Leg., Reg. Sess. (Wash. 1993) ("[b]ecause some Washington citizens reside on their boats or in their cars or vans, it has been recommended that the homestead exemption's scope be expanded to include any personal or real property that the owner uses as a residence"). "Once the owner occupies the property as a principal residence, a homestead exception is established automatically without a declaration." Nw. Cascade, Inc. v. Unique Constr., Inc., 187 Wn. App. 685, 697-98, 351 P.3d 172 (2015). A "homestead is exempt from attachment and from execution or forced sale for the debts of the owner up to the amount specified in RCW 6.13.030." RCW 6.13.070(1).

11

2. Declaration of homestead

The City agrees that a truck may qualify for homestead protection. But it asserts that under RCW 6.13.040, Long needed to file a declaration of homestead for the Act to protect his truck. Long contends that occupying his vehicle as his principal home rendered it automatically protected. We agree with Long.

We review de novo issues of statutory interpretation. Nw. Cascade, 187 Wn. App. at 696. We "'look first to the plain meaning of the statutory language, and . . . interpret a statute to give effect to all language, so as to render no portion meaningless or superfluous.'" Benson v. State, 4 Wn. App. 2d 21, 26, 419 P.3d 484 (2018) (quoting Rivard v. State, 168 Wn.2d 775, 783, 231 P.3d 186 (2010)). Our fundamental objective when construing a statute is to determine and carry out the legislature's intent. King County v. King County Water Dist. No. 20, 194 Wn.2d 830, 853, 453 P.3d 681 (2019).

RCW 6.13.040(1) lists circumstances under which the homestead exemption automatically protects property, and circumstances that require a declaration of homestead for the exemption to apply:

> *Property described in RCW 6.13.010 constitutes a homestead and is automatically protected by the exemption* described in RCW 6.13.070 from and after the time the real or personal property is occupied as a principal residence by the owner or, if the homestead is unimproved or improved land that is not yet occupied as a homestead, from and after the declaration or declarations required by the following subsections are filed for record or, if the homestead is a mobile home not yet occupied as a homestead and located on land not owned by the owner of the mobile home, from and after delivery of a declaration as prescribed in RCW 6.15.060(3)(c) or, if

12

the homestead is *any other personal property*, from and after the
delivery of a declaration as prescribed in RCW 6.15.060(3)(d).

(Emphasis added.)

The opening clause of the subsection provides, "Property described in
RCW 6.13.010 constitutes a homestead and is automatically protected . . . from
and after the time the real or personal property is occupied as a principal
residence by the owner." RCW 6.13.010(1) defines a "homestead" as "real or
personal property that the owner uses as a residence." Thus, because Long
occupied his truck as a principal residence, the homestead exemption
automatically applies.

The City points to the final clause in RCW 6.13.040(1) and asserts that the
language requiring a declaration for "any other personal property" applies to
Long's truck. But such a reading would render meaningless the terms "any
other." See Benson, 4 Wn. App. 2d at 26. The final clause refers to personal
property *other than* the personal property listed in the opening clause (i.e.,
personal property described in RCW 6.13.010). Thus, the City's reading would
have the final clause contradict the opening clause.[8]

---

[8] The City's interpretation also appears inconsistent with case law providing that
property occupied as a residence is automatically protected as a homestead without a
declaration. See Schermer, 161 Wn.2d at 953 ("A home automatically becomes a
homestead when the owners use the property as their primary residence"); Fed.
Intermediate Credit Bank of Spokane v. O/S Sablefish, 111 Wn.2d 219, 229, 758 P.2d
494 (1988) ("The Legislature substantially rewrote the homestead act in 1981. The
major purpose of this effort was to make the homestead classification automatic once
the property is occupied as a permanent residence."); Felton v. Citizens Fed. Sav. &
Loan Ass'n of Seattle, 101 Wn.2d 416, 420, 679 P.2d 928 (1984) ("possession was (and
is) the key to the right to homestead"); Viewcrest Condo. Ass'n v. Robertson, 197 Wn.
App. 334, 340, 387 P.3d 1147 (2016) ("Once property is occupied as a primary
residence, a homestead is automatically created."); Nw. Cascade, 187 Wn. App. at 697-
98 ("Once the owner occupies the property as a principal residence, a homestead
exception is established automatically without a declaration."); In re Wilson, 341 B.R. 21,

13

The City supports its interpretation of RCW 6.13.040(1) by citing the declaration requirements for "other personal property" set forth in RCW 6.15.060(3)(d). In a declaration for "other personal property" the debtor must state that they reside on the personal property as a homestead. RCW 6.15.060(3)(d). The City claims that if "other personal property" from RCW 6.13.040(1) did not refer to occupied personal property, then RCW 6.15.060(3)(d) would not require the debtor to state that they reside on the personal property.

The two statutes do appear inconsistent. While RCW 6.13.040(1) provides that occupied personal property is automatically protected, RCW 6.15.060(3)(d) implies that a declaration is required for the Act to protect such property. Thus, the statute is susceptible to more than one reasonable meaning. Statutes that can be reasonably interpreted in two or more ways are ambiguous. Payseno v. Kitsap County, 186 Wn. App. 465, 469, 346 P.3d 784 (2015). When statutes are ambiguous, it is appropriate for courts "to resort to aids to construction, including legislative history." King County, 194 Wn.2d at 853. Ultimately, we must harmonize related statutory provisions to carry out a consistent scheme that maintains the statute's integrity. King County, 194 Wn.2d at 853. And again, with respect to the Homestead Act, the law requires us to liberally construe the Act in favor of the homesteader. Schermer, 161 Wn.2d at 953.

_____

25-26 (9th Cir. 2006) (stating that an automatic homestead exemption is created for real or personal property from and after the time the property is occupied as a principal residence by the owner).

14

When a statute is ambiguous, courts "'rely on statutory construction, legislative history, and relevant case law to determine legislative intent.'" Payseno, 186 Wn. App. at 469 (quoting State v. Rice, 180 Wn. App. 308, 313, 320 P.3d 723 (2014)). The final bill report on the 1993 amendment states that the legislature sought to expand the scope of the exemption "to include *any* personal or real property" because some citizens resided on their boats or in their cars or vans. FINAL B. REP. ON SUBSTITUTE S.B. 5068 (emphasis added). The report's summary also provides that "[t]he definition of homestead is expanded to include *any* real or personal property that the owner uses as a residence." FINAL B. REP. ON SUBSTITUTE S.B. 5068 (emphasis added). This history shows the legislature intended to for the Act to automatically protect people residing in their vehicles. Moreover, this broader interpretation of the types of property automatically protected under the Act maintains the statute's integrity by effecting its overall purpose of protecting homes.

The undisputed evidence shows that Long lived in his truck when the City impounded it. Because the legislative history shows an intention for broad protections of personal property and because we must liberally construe the Act, we interpret the Homestead Act not to require a declaration for personal property that the owner is occupying as a principal residence. Thus, the truck constituted a homestead and the homestead exemption applied.

3. Attachment

The City claims that the lien resulting from the impoundment of Long's truck did not violate the Homestead Act because the payment plan, which does

not encumber Long's truck, extinguished it. Long argues a lien was automatically placed on his truck upon it being towed, and this constituted an attachment that violated the Homestead Act. We determine that the lien never attached to Long's truck.

As stated above, under Washington law, "[a] registered tow truck operator who has a valid and signed impoundment authorization has a lien upon the impounded vehicle for services provided in the towing and storage of the vehicle." RCW 46.55.140(1). For a towing company to release an impounded vehicle, SMC 11.30.120(B) requires the registered owner to pay all the accumulated impound debt to the towing company. In cases of extreme financial hardship, however, a magistrate may allow the registered owner to make payments over time if there is an effective guarantee of payment. SMC 11.30.160(B). If a magistrate sets up such a payment plan, the City pays the costs of impoundment to the towing company. SMC 11.30.160(B).

Because statutes creating liens are in derogation of the common law, we strictly construe them. City of Algona v. Sharp, 30 Wn. App. 837, 843, 638 P.2d 627 (1982) (citing Dean v. McFarland, 81 Wn.2d 215, 500 P.2d 1244 (1972)). Unless the statute lists a lien among the several types that one may execute against a homestead, courts must infer that the legislature intended the omission of the lien type from the Homestead Act. Sharp, 30 Wn. App. at 842. There is not a statutory provision for execution or forced sale of a homestead to satisfy liens under RCW 46.55.140(1). See RCW 6.13.080. Because "[t]he homestead is . . . a species of land tenure exempt from execution and forced sale in all but

16

the enumerated circumstances," a lien type not enumerated in the Act cannot be superior to the homestead.  Sharp, 30 Wn. App. at 843.

As for the attachment of liens under RCW 46.55.140(1), RCW 6.13.090 states, "A judgment against the owner of a homestead shall become a lien on the value of the homestead property in excess of the homestead exemption . . . ." While courts have not yet addressed the attachment process for liens under RCW 46.55.140(1), they have determined that "a general judgment lien does not operate upon, and does not attach to, premises which constitute a homestead." Locke v. Collins, 42 Wn.2d 532, 535, 256 P.2d 832 (1953); In re DeLavern, 337 B.R. 239, 242 (Bankr. W.D. Wash. 2005) (noting that, under Washington's Homestead Act, a judgment lien "cannot attach to homestead property"). Instead, "[l]iens commenced under RCW 6.13.090 encumber the value *in excess* of the homestead exception."  In re Deal, 85 Wn. App. 580, 584, 933 P.2d 1084 (1997).

We see no reason why the attachment law for liens under RCW 46.55.140(1) would differ from that for judgment liens, and therefore apply these principles to the issue before us.  Thus, while RCW 46.55.140(1) created a lien on Long's truck, it could not attach.  See DeLavern, 337 B.R. at 242 ("Thus, while a judgment lien is created on property rather than value pursuant to *Wilson Sporting Goods*,[9] under the more specific analysis of *Deal* and *Sweet*, it cannot attach to homestead property.").  Further, because Long's truck did not have

---

[9] Wilson Sporting Goods Co. v. Pedersen, 76 Wn. App. 300, 886 P.2d 203 (1994).

17

value above the homestead exemption, there was no property to which the RCW 46.55.140(1) lien could attach. For these reasons, we reject Long's argument that the attachment of a lien to his truck violated the Homestead Act.

4. Withholding Truck under Threat of Forced Sale

Long claims the City would release his truck, which it withheld under the threat of forced sale, only if he agreed to a payment plan. The City responds that the sale of an unclaimed vehicle is not forced. We decide that the City could not withhold Long's truck under the threat to forcibly sell it, or threaten to forcibly sell it unless he agreed to pay the associated fees, without violating his homestead rights. For these reasons, we determine the payment plan is void.

If a registered owner does not claim their vehicle or contest impoundment within 15 days of the tow, the tow truck operator "shall conduct a sale of the vehicle at public auction." RCW 46.55.130(1). The tow truck operator uses the proceeds from the sale to satisfy its lien and remits any surplus to the State. RCW 46.55.130(2)(h). The registered owner may seek the surplus proceeds within one year of the sale. RCW 46.55.130(2)(h).

Here, the City does not contest Long's assertion that Lincoln Towing would have sold his truck at public auction on November 5 if he had not agreed to the payment plan three days earlier. Instead, it claims that any sale of the truck would not have been a "forced sale" because Long consented to any such sale by willfully violating the 72-hour Rule.

Washington courts have defined a "forced sale" as a sale with an element of compulsion:

> "A forced sale is generally a transaction in which there is an element of compulsion on the part of either the seller or the buyer. If the element of compulsion is based upon purely economic reasons, the sale is generally considered voluntary . . . Where, however, a seller or buyer is forced to act under a decree, execution or something more than mere inability to maintain the property, the element of compulsion is based upon legal, not economic, factors."

Felton v. Citizens Fed. Sav. & Loan Ass'n of Seattle, 101 Wn.2d 416, 422, 679 P.2d 928 (1984) (alteration in original) (quoting State v. Lacey, 8 Wn. App. 542, 549, 507 P.2d 1206 (1973)). "Impoundment under Wash. Rev. Code § 46.55 is not a consensual consumer transaction." Betts v. Equifax Credit Info. Servs., Inc., 245 F. Supp. 2d 1130, 1133 (W.D. Wash. 2003). Although the City argues that selling an unclaimed vehicle at a public auction is a consensual transaction, a state statute, not the registered owner, authorizes the sale of the vehicle. See Betts, 245 F. Supp. 2d at 1134 (stating that impounds are not consensual because they are authorized by state statute, not the vehicle's owner). In other words, legal factors compel the sale. Accordingly, such a transaction constitutes a forced sale. Thus, because Long's truck constituted his homestead, the City—through the tow operator—could not forcibly auction it.

While the City did not ultimately forcibly sell Long's truck, it did withhold his truck under the threat of such a sale unless he agreed to pay the impoundment costs. Liberally construing the Act to achieve its purpose of protecting homes, we determine that this violated the Homestead Act. The City had no legal authority to make the threat to induce Long to enter a payment plan. Thus, we conclude the payment plan is void. See Sharp, 30 Wn. App. at 843 (noting that a sale of an exempted homestead is void).

19

B. Eighth Amendment

The City argues the trial court erred by determining that the impoundment costs violated the Eighth Amendment. Long contends that both the impoundment and the associated costs constituted excessive punishment. We determine that, assuming without deciding that the impoundment of Long's truck and the associated costs constituted penalties, they fell short of constitutional excessiveness.

"Constitutional interpretation is a question of law reviewed de novo." State v. Ramos, 187 Wn.2d 420, 433, 387 P.3d 650 (2017).

The Eighth Amendment to the United States Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The amendment's purpose, apart from the bail clause, is to limit the government's power to punish. Austin v. United States, 509 U.S. 602, 609, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993). The Fourteenth Amendment's due process clause makes the Eighth Amendment's excessive fines clause applicable to the states. Timbs v. Indiana, __ U.S. __, 139 S. Ct. 682, 687, 203 L. Ed. 2d 11 (2019).

When determining how the Eighth Amendment affects a specific civil in rem forfeiture, courts address two questions: "(1) Does the forfeiture constitute punishment, and (2) if so, is that punishment excessive?" Tellevik v. Real Property Known as 6717 100th Street S.W., 83 Wn. App. 366, 372, 921 P.2d 1088 (1996). The party challenging the constitutionality of a forfeiture bears the

burden of demonstrating an Eighth Amendment violation.  United States v. Jose, 499 F.3d 105, 108 (1st Cir. 2007).

In evaluating excessiveness, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish."  United States v. Bajakajian, 524 U.S. 321, 334, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998).  Thus, a punitive forfeiture violates the Eighth Amendment if it is "grossly disproportional to the gravity of a defendant's offense."  Bajakajian, 524 U.S. at 334.  If the value of the fine or forfeiture is within the range prescribed by the legislative body, a strong presumption exists that a forfeiture is constitutional.  United States v. Seher, 562 F.3d 1344, 1371 (1st Cir. 2009).

Here, impounding Long's truck and requiring him to pay the associated fees is not a disproportionate punishment for a parking violation.  Moving a vehicle has a direct relationship to the offense of illegally parking.  And the fees are not excessive because the impoundment costs repay the City's agent, Lincoln Towing, for the costs of towing the vehicle based on contract.  "The government is entitled to rough remedial justice."  State v. Clark, 124 Wn.2d 90, 103, 875 P.2d 613 (1994) (determining forfeitures of the defendant's homestead and motorhome were not excessive because their value nearly equaled the cost of prosecution and investigation), overruled on other grounds by State v. Catlett, 133 Wn.2d 355, 945 P.2d 700 (1997).  Moreover, towing illegally parked vehicles and requiring the owner to pay the associated costs are the exact penalties the

city council authorized for a violation of the 72-hour Rule.  See

SMC 11.72.440(E).  Thus, a strong presumption exists that the penalties were

not excessive, which presumption Long does not overcome.  For these reasons,

we conclude that neither the impoundment nor the associated costs constituted

excessive punishment under the Eighth Amendment.

   C.  Substantive Due Process

   Long contends that the City violated his substantive due process rights by

towing his car because it deprived him of a shelter and exposed him to inclement

weather.  The City argues that Long cannot assert this claim to obtain relief from

impoundment.  We agree with the City.

   The Fourteenth Amendment's due process clause provides, "No state

shall . . . deprive any person of life, liberty, or property, without due process of

law." U.S. CONST. amend. XIV, § 1.  The substantive component of the clause

bars certain arbitrary and wrongful government actions regardless of procedural

fairness.  Foucha v. Louisiana, 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d

437 (1992).  The clause, however, "is phrased as a limitation on the State's

power to act, not as a guarantee of certain minimal levels of safety and security."

DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195, 109 S.

Ct. 998, 103 L. Ed. 2d 249 (1989).  Thus, "[the clause's] language cannot fairly

be extended to impose an affirmative obligation on the State to ensure that those

interests do not come to harm through other means." DeShaney, 489 U.S.

at 195.

22

An exception to this rule of nonliability, however, exists through the state-created danger doctrine. Munger v. City of Glasgow Police Dep't, 227 F.3d 1082, 1086 (9th Cir. 2000). Thus, some courts have recognized that plaintiffs can argue the doctrine to hold states liable under 42 U.S.C. § 1983.[10] Henry A. v. Willdren, 678 F.3d 991, 1002 (9th Cir. 2012) ("The State can also be held liable under the Fourteenth Amendment's Due Process clause . . . 'where state action creates or exposes an individual to a danger which [they] would not have otherwise faced.'" (quoting Kennedy v. City of Ridgefield, 439 F.3d 1055, 1061 (9th Cir. 2006))); Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 249 (5th Cir. 2003) (noting that the Tenth, Sixth, Third, Second, and Ninth Circuits have recognized state actors may be held liable under the state-created danger doctrine if they knowingly endanger a person).[11] Long cites no case that considers the state-created danger doctrine in a context other than a 42 U.S.C. § 1983 suit.

Long cites two cases, Lawrence v. Texas, 539 U.S. 558, 578-79, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003), and Foucha, 504 U.S. at 77-83, to argue that a plaintiff may raise a due process claim to obtain relief in an enforcement action.

---

[10] Neither the United States Supreme Court nor any Washington court has endorsed this doctrine.

[11] Henry A. concerned a 42 U.S.C. § 1983 suit against a county and county officials for alleged systematic failures in its foster care system that injured children in its care. 678 F.3d at 996-98. Kennedy concerned a 42 U.S.C. § 1983 claim against a police officer. 439 F.3d at 1057. In that case, a couple reported to the officer that a 13-year-old neighbor had molested their child and informed the officer of the 13-year-old's violent tendencies. Kennedy, 439 F.3d at 1057-58. Though the officer told the couple he would notify them before speaking to the neighbor about their complaint, he failed to do so. Kennedy, 439 F.3d at 1058. Later that night, the 13-year-old attacked the couple, shooting the woman and fatally shooting her husband. Kennedy, 439 F.3d at 1058.

But neither of these cases addresses the state-created danger doctrine or suggests that we should expand a narrow exception for liability to serve as a way to pursue relief in civil enforcement actions. As a result, we determine Long cannot raise the state-created danger doctrine to seek relief from impoundment.

### D. The Private Affairs Guaranty

In supplemental briefing, Long relies on State v. Villela, 194 Wn.2d 451, 450 P.3d 170 (2019), to argue that the impounding officer's failure to consider whether impoundment was reasonable under Long's individual circumstances or whether reasonable alternatives existed to impoundment violated article I, section 7 of the state constitution—i.e., the private affairs guaranty. The City argues that Long cannot raise this issue for the first time on appeal. We agree with the City.

An appellate court may refuse to review any claim of error that a party did not raise before the trial court. RAP 2.5(a). A limited exception exists, however, for manifest errors affecting a constitutional right. RAP 2.5(a)(3). "To determine whether manifest constitutional error was committed there must be a 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences.'" State v. A.M., 194 Wn.2d 33, 38, 448 P.3d 35 (2019) (alteration in original) (internal quotation marks omitted) (quoting State v. O'Hara, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)). An appellant meets this requirement if they make a plausible showing that the error led to actual prejudice. A.M., 194 Wn.2d at 39.

To determine whether Long makes a plausible showing of actual prejudice, we consider whether Long has sufficiently asserted a violation of article I, section 7. Courts use a two-step analysis to determine whether the government violated a person's rights under article I, section 7 of the Washington Constitution. Villela, 194 Wn.2d at 458. "First, [courts] 'determine whether the action complained of constitutes a disturbance of one's private affairs.' If so, [they] turn to the second step: 'whether authority of law justifies the intrusion.'" Villela, 194 Wn.2d at 458 (citation omitted) (quoting State v. Puapuaga, 164 Wn.2d 515, 522, 192 P.3d 360 (2008)). Regarding the second step, our Supreme Court has identified three instances in which a vehicle may be impounded:

> A vehicle may be lawfully impounded (1) as evidence of a crime, when the police have probable cause to believe the vehicle has been stolen or used in the commission of a felony offense; (2) under the "community caretaking function" if (a) the vehicle must be moved because it has been abandoned, impedes traffic, or otherwise threatens public safety or if there is a threat to the vehicle itself and its contents of vandalism or theft *and* (b) the defendant, the defendant's spouse, or friends are not available to move the vehicle; and (3) in the course of enforcing traffic regulations if the driver committed a traffic offense for which the legislature has expressly authorized impoundment.

State v. Tyler, 177 Wn.2d 690, 698, 302 P.3d 165 (2013) (quoting State v. Williams, 102 Wn.2d 733, 742-43, 689 P.2d 1065 (1984)). Ultimately, "an impound is lawful under article I, section 7 only if, in the judgment of the impounding officer, it is reasonable under the circumstances and there are no reasonable alternatives." Villela, 194 Wn.2d at 460.

As Long's new claim arises under article I, section 7, it implicates a constitutional right. But Long does not show a plausibility of practical and identifiable consequences because he fails to show that the impoundment was unlawful under article I, section 7. Because an impoundment is a seizure under our constitution, Long shows a disturbance of his private affairs and meets the first step of the analysis. See Villela, 194 Wn.2d at 458. Turning to the second step, we must determine whether authority of law justifies the intrusion. Here, the SMC permits police to impound vehicles parked in violation of the 72-hour Rule. SMC 11.72.440(E). Thus, the police could lawfully impound Long's truck in enforcing traffic regulations.[12]

Long also claims the impoundment was unlawful because the City did not consider reasonable alternatives to impounding the truck. But Long told the officers that the truck was inoperable and he needed a part to repair it. The PEO was aware of this as well. Long also was not present when the PEO towed the vehicle. Thus, both at the time the officers called the PEO and when the PEO arrived to tow the truck, there did not appear to be a reasonable way to move the truck other than to impound it. Indeed, Long does not suggest a reasonable alternative to the impoundment.

Because Long does not show that the impoundment was unlawful under article I, section 7, he fails to make a plausible showing that the asserted

---

[12] SMC 11.72.440(E) falls under Title 11, "Vehicles and Traffic," Subtitle I, "Traffic Code."

constitutional violation had practical and identifiable consequences.  We decline to review the claim for the first time on appeal.

### III. CONCLUSION

We affirm the superior court's determination that the City violated Long's homestead rights by withholding his truck under the threat of forced sale and refusing to release it until he signed a payment plan.  Thus, we also affirm the superior court's decision to void the payment plan.  And we affirm the superior court's conclusion that the City did not violate Long's substantive due process rights.  Finally, we reverse the superior court's determination that the impoundment costs violate the Eighth Amendment and affirm its conclusion that the impoundment itself did not constitute excessive punishment.

We affirm in part and reverse in part.

_Chun, J._

WE CONCUR: