# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>KATHRYN VIOLET BUSS,<br><br>               Respondent,<br><br>  and<br><br>LEE JAMES BUSS,<br><br>               Appellant. | No. 87462-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Lee Buss appeals an order that found him in contempt and awarded attorney fees to his former spouse, Kathryn Buss.[1] We reverse the contempt order solely to the extent that it awarded fees incurred in connection with Lee's bankruptcy proceeding, and we remand to the trial court to enter a revised order that limits the award of fees to those incurred in connection with state-level proceedings. Otherwise, we affirm.

I

Lee and Kathryn married in 2005 and separated in March 2019. They share a child, J.B., who has special needs. The trial court entered a final parenting plan in November 2020.

---

[1] We refer to the parties by their first names for clarity. We intend no disrespect.

Around March 2021, Kathryn relocated with J.B. to Oregon. She petitioned to modify the parenting plan, the matter went to trial, and on June 6, 2023, the trial court entered final orders. In its final relocation order, the court entered judgment in Kathryn's favor for $62,786.94 in attorney fees and $1,250.00 in guardian ad litem (GAL) fees (June 2023 judgment). In support of the fee award, the court found that "the procedural actions made by [Lee] in this case led to [Kathryn] incurring legal fees. The court finds these action[s] were made in bad faith. [Lee] has an ability to pay and [Kathryn] does not." (Some capitalization omitted.) Later, the court entered a revised judgment adding fees awarded in connection with Lee's motion for reconsideration (August 2023 judgment).

On October 27, 2023, the trial court entered an order finding Lee in contempt for failing to comply with a June 9, 2023 order that directed him not to engage in excessive and abusive communications with J.B.'s providers. The contempt order included a judgment awarding Kathryn $7,210.00 in attorney fees (October 2023 judgment). Both the August 2023 judgment and the October 2023 judgment contain similar statements that "Lee . . . shall pay any collection costs including, but not limited to, any and all collection attorney and/or collection agency fees incurred to collect payment of the Judgment if the Judgment amount is not satisfied within thirty days of this order."

On November 20, 2023, Lee filed a Chapter 13 bankruptcy petition. Kathryn retained counsel to represent her in Lee's bankruptcy, including by litigating whether her judgments against Lee were dischargeable. The bankruptcy court dismissed Lee's case without prejudice in July 2024.

On September 25, 2024, Kathryn moved to hold Lee in contempt for not paying the August 2023 and October 2023 judgments. The trial court ordered Lee to show cause, and on October 21, 2024, it held a hearing on Kathryn's motion. The court inquired about "what payment, if any, [Lee] has . . . made toward his obligations and the judgments that are outstanding against him? Even in the last six months, . . . because I am not seeing within the case file that there's been any payments." In response, Lee did not dispute that he had made no payments toward the judgments.

The trial court was "not convinced at this point that . . . Lee . . . is unable to pay." It found that "although [Lee] has undergone some financial difficulties and did explore his options available in and through bankruptcy, bankruptcy is no longer filed or pending," and "as much as [Lee] has given this Court some explanation as to . . . why he has not made any type of monetary payment towards his outstanding judgments . . . , this Court will be granting and finding that the order for today's contempt hearing will be entered . . . in the amount as presented by [Kathryn]." The trial court entered a written order finding Lee in contempt for failing to obey the August 2023 and October 2023 judgments. It also found that "Lee . . . had the ability to repay the debt as ordered and chose not to," that Lee acted in

bad faith, and that "Lee . . . has the ability to follow the orders, but is not willing to." In support of its bad faith finding, the trial court explained,

> At trial in May 2023, the court found that Lee . . . acted intentionally and in bad faith during the custody action (Dec 2020-October 2023), causing [Kathryn] to incur legal fees. The court ruled that Lee . . . has the ability to pay, while [Kathryn] does not. Despite this, Lee . . . refuses to repay the debt as ordered and has actively worked against [Kathryn]'s attempts to collect, demonstrating further bad faith.

The trial court awarded Kathryn $15,448.08 in attorney fees. It also stated that Lee could purge contempt by paying at least one percent of the $100,497.64 owed before a November 21 review hearing.

Lee appeals.

II

As an initial matter, failure to pay a money judgment must generally be remedied by execution or garnishment and not through contempt. See RCW 6.17.070 (judgment for "the payment of money or the delivery of real or personal property" may be enforced by execution; judgment requiring "the performance of any other act" may be enforced through contempt); RCW 6.27.020(1) (authorizing court clerks to "issue writs of garnishment returnable to their respective courts for the benefit of a judgment creditor who has a judgment wholly or partially unsatisfied").

Enforcement through contempt is authorized for failure to comply with a "support or maintenance order," RCW 26.18.050(1), meaning a "judgment, decree, or order of support or maintenance." RCW 26.18.020(16). However, the August 2023 and October 2023 judgments at issue here were not support or maintenance

4

orders within the meaning of RCW 26.08.050(1).  The August 2023 judgment evidenced a debt for fees awarded in connection with a parenting plan modification where support was not at issue.  And the October 2023 judgment evidenced a debt for fees awarded in a contempt proceeding where the underlying noncompliance was unrelated to maintenance or support.  Accordingly, it appears these judgments were not enforceable through contempt.

Nevertheless, Lee did not assert in the trial court, nor does he assert on appeal, that the trial court could not use its contempt power to remedy Lee's failure to pay the at-issue judgments.  To the contrary, Lee and his counsel framed Lee's arguments under Washington's contempt statute, arguing that because Lee demonstrated his inability to pay, he had an affirmative defense to contempt.  Accordingly, we conclude that to the extent the trial court erred by exercising its contempt power to enforce the at-issue judgments, Lee invited that error.  See In re Dependency of K.R., 128 Wn.2d 129, 147, 904 P.2d 1132 (1995) (under invited error doctrine, court "will deem an error waived if the party asserting such error materially contributed thereto").  We turn to Lee's arguments.

III

Lee argues that the trial court erred by finding that he had and has the ability to pay and failed to do so in bad faith.  Thus, he contends, the trial court erred by finding contempt.  We disagree.

"Contempt" means, as relevant here, "intentional . . . [d]isobedience of any lawful judgment, decree, or process of the court."  RCW 7.21.010(1)(b).  "If the

court finds that [a] person has failed or refused to perform an act that is yet within the person's power to perform, the court may find the person in contempt" and impose a remedial sanction, including "[a]n order designed to ensure compliance with a prior order of the court." RCW 7.21.030(2)(c). In the context of civil contempt, " 'the law presumes that one is capable of performing those actions required by the court . . . [and the] inability to comply is an affirmative defense.' " Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995) (alterations in original) (quoting King v. Dep't of Soc. & Health Servs., 110 Wn.2d 793, 804, 756 P.2d 1303 (1988)). We review a contempt order under RCW 7.21.010 for abuse of discretion. Id. "An abuse of discretion is present only if there is a clear showing that the exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons." Id.

Here, the trial court had a tenable basis to find that Lee had and has the ability to pay. It was undisputed that Lee lost his job in July 2024 and was collecting unemployment and disability at the time of the contempt hearing. And Lee claimed that after rent, utilities, health insurance, and child support, he had less than $600.00 per month to cover all of his other expenses. Yet according to Lee's own declaration, he had paid more than $80,000.00 to his attorneys since the time the June 2023 judgment was entered.[2] This included more than $12,000.00 in just the

---

[2] Lee declared that he paid approximately $60,057.74 in attorney fees from June 2023 to November 2023. He also declared that he incurred approximately $14,155.23 in attorney fees from November 2023 until July 2024, and that he still owed, $4,371.56, so it was reasonable for the trial court to infer that Lee paid

few months leading up to the contempt hearing. The trial court did not abuse its discretion by finding that Lee had and has an ability to pay the outstanding judgments, at least to some degree.

The trial court also did not abuse its discretion by finding that Lee acted in bad faith based on his "refus[al] to repay the debt as ordered" and his "actively work[ing] against [Kathryn's] attempts to collect." Lee has a history, as previously found by the trial court, of engaging in abusive use of conflict on numerous occasions and conducting bad faith litigation that caused Kathryn—the full-time caregiver to the parties' special-needs child—to incur the legal fees that constitute the bulk of Kathryn's judgments. Lee had the ability, as discussed, to pay those judgments to some degree. Yet, as the trial court put it, "[t]here's been no showing of even a gesture of payment to show that he is making an effort." When asked to explain this total lack of effort, Lee made a specious argument that he could continue not paying because he intended to re-file for bankruptcy at some unspecified point in the future. Lee's failure to provide a reasonable justification for not devoting *any* of his resources to the judgments supports a finding of bad faith. In any case, even if the record did not support the trial court's bad faith finding, reversal would not be required: A court need not find bad faith to support a contempt finding or impose remedial sanctions under the general contempt

$9,783.67 in attorney fees during that period. And, Lee declared that from July 2024 to October 2024, he incurred $13,264.68 in attorney fees and $1,140.00 of that amount had not been paid, meaning it was reasonable to infer that Lee paid $12,124.68 in attorney fees during that period.

statute.  See RCW 7.21.010(1), .030(2); cf. RCW 26.09.160(2)(b) (requiring bad faith finding to support contempt for failure to comply with certain family law orders).

As a final matter, the record reflects Lee's representation that on November 20, 2024, Lee purged his contempt by paying one percent of the outstanding debt before the date set by the trial court for the next review hearing.[3]  Based on Lee's representation, we cannot provide Lee any further relief with regard to the contempt finding.  Cf. In re Interest of M.B., 101 Wn. App. 425, 432, 3 P.3d 780 (2000) (issues raised on appeal were moot because at the time of the appeal, the appellants had purged or served the term of their contempt sanctions).  For this reason and for the reasons discussed above, Lee does not establish a basis for appellate relief from the contempt finding or from the remedial sanction imposed therefor.[4]

IV

Lee next assigns error to the trial court's finding that the debt evidenced by Kathryn's judgments was "in the nature of support."  We review a trial court's findings for substantial evidence, meaning evidence sufficient to convince a

---

[3] Lee does not request much less demonstrate any entitlement to a refund. However, he is entitled to a partial satisfaction of judgment to reflect any payment.

[4] Lee points out that the trial court's written order found that he failed to pay not only the August 2023 and October 2023 judgments, but also the June 2023 judgment, which had been revised by the August 2023 judgment, and the judgment for attorney fees that was awarded in the order itself.  For these same reasons, reversal to correct these apparent clerical errors is not required.

rational, fair-minded person that the finding is true.  <u>Sunnyside Valley Irrig. Dist. v. Dickie</u>, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).

The trial court found that the debt was in the nature of support because the judgments represented "real costs paid by Kathryn . . . in child-centered custody litigation to which the welfare of the child was central," and "[t]he monies addressed by this judgment would otherwise have gone to the support of the child." Substantial evidence supports these findings.  The record reflects that J.B.'s welfare was central to the parenting plan modification proceeding from which the underlying debt arose.  Kathryn declared that the debt "represents real costs that [she had] paid," and Lee's failure to pay the debt "has exacerbated [her] financial distress, including [her] ability to support [her]self and [the parties'] severely disabled child, for whom [she had] sole responsibility."  Although the at-issue judgments do not fall within the statutory definition of "support or maintenance orders" for reasons already discussed, we discern no error in the trial court's determination, as a factual matter, that they were in the nature of support.

V

A

Lee next challenges the trial court's award of fees to Kathryn.  He contends that the trial court lacked subject matter jurisdiction to award fees incurred in connection with his bankruptcy proceeding.  Lee raises this issue for the first time on appeal, and although we may review it under RAP 2.5(a)(1), he fails to provide adequate briefing on the issue.  "A superior court, as a court of general jurisdiction,

9

is presumed to act within its authority absent an affirmative showing to the contrary." State v. Hawkins, 164 Wn. App. 705, 712, 265 P.3d 185 (2011). Lee does not provide any analysis to support this showing.

Nonetheless, we agree with Lee that, as he argued in the trial court, the trial court lacked authority to award Kathryn the fees she incurred in connection with his bankruptcy proceeding. "In Washington, attorney fees may be awarded when authorized by a contract, a statute, or a recognized ground in equity." Kaintz v. PLG, Inc., 147 Wn. App. 782, 785, 197 P.3d 710 (2008). "Whether a specific statute, contractual provision, or recognized ground in equity authorizes an award of fees is a question of law and is reviewed de novo." Id. at 785-86.

The trial court did not specify the basis for its attorney fee award. Kathryn argues it was authorized by RCW 7.21.030 or RCW 26.18.160. RCW 7.21.030(3) provides that a court may, upon a finding of contempt, "order a person found in contempt of court to pay a party for . . . any costs incurred *in connection with the contempt proceeding*, including reasonable attorney's fees." (Emphasis added.) But fees incurred in connection with Lee's bankruptcy were not incurred "in connection with the contempt proceeding." RCW 26.18.160 states, "In any action to enforce *a support or maintenance order* under this chapter, the prevailing party is entitled to a recovery of costs, including an award of reasonable attorney fees." (Emphasis added.) But as discussed, the at-issue judgments were not "support or maintenance orders" under chapter 26.18 RCW. Similarly, fees were not recoverable under RCW 26.09.140, the general family law attorney fee statute,

which authorizes a fee award for "maintaining or defending any proceeding *under this chapter*." (Emphasis added.)

Finally, Kathryn points to the language in the August 2023 and October 2023 judgments directing Lee to pay "collection attorney and/or collection agency fees incurred to collect payment of the Judgment." But Kathryn cited no authority in the trial court for the proposition that when entering the judgments, the court would have been authorized to prospectively award fees beyond those authorized by law, much less that fees incurred to litigate the characterization of her judgments under federal bankruptcy law are fees incurred *to collect payment*. Cf. Nw. Cascade, Inc. v. Unique Constr., Inc., 187 Wn. App. 685, 704, 351 P.3d 172 (2015) (fees incurred to quash homestead declaration were recoverable under contract's fee provision for "collection proceedings" where executing on the debtor's real property in state law enforcement proceeding required litigating the claimed homestead exemption). For the foregoing reasons, the trial court erred by awarding Kathryn fees she incurred in connection with Lee's bankruptcy proceeding.

B

Lee also argues that some of the non-bankruptcy-related fees that Kathryn incurred to enforce her judgments are not recoverable under state law. But in the trial court, Lee argued only that the fees incurred in connection with his bankruptcy were nonrecoverable. He did not further argue that Kathryn was not entitled to any portion of the fees she incurred in connection with state-level enforcement

11

proceedings. Therefore, this argument is waived. <u>See</u> RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court.").

VI

We reverse to the extent that the trial court awarded fees that Kathryn incurred in connection with Lee's bankruptcy proceeding, and we remand to the trial court to enter a revised order limiting its award of fees to those incurred in connection with state-level proceedings. Otherwise, we affirm.[5]

_Birk, J._

WE CONCUR:

_Feldman, J._        _Coburn, J._

---

[5] Kathryn requests a variety of affirmative relief in her respondent's brief. Her request for costs should be directed to a commissioner or court clerk as provided in Title 14 RAP. Her other requests for affirmative relief, including an award of fees on appeal, are hereby denied.